FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO
25 APR 23 AM 10:21

| | |
|---|---|
| UNITED STATES FEDERAL DISTRICT COURT FOR THE DISTRICT OF COLORADO<br>901 19th Street, Denver, Colorado 80294 | |
| Plaintiff:<br><br>**JASON HAUBENREISER, *PRO SE***<br><br>v.<br><br>Defendants:<br><br>**ABACUS CAPITAL GROUP, LLC**<br>**AMFP V CENTRAL PARK, LLC**<br>**MICHAEL SARNO**<br>**SAKO AND PARTNERS LOWER HOLDINGS, LLC**<br>**ASSET LIVING, LLC**<br>**MICHAEL S. MCGRATH**<br>**M. RYAN MCGRATH**<br>**SHANNA MARTINEZ** | ▲COURT USE ONLY▲ |
| Party w/o Attorney:<br>Jason Haubenreiser *Pro Se*<br>1955 Ulster St. #452<br>Denver, CO 80220<br>Phone Number: 720-272-8457<br>E-mail: Jhauben@gmail.com | **Case No.:**<br>**1:24-cv-02687-NYW-TPO**<br><br>**Division:** |
| AMENDED COMPLAINT | |

## I. INTRODUCTION

Plaintiff Jason Haubenreiser, proceeding pro se, brings this amended complaint to address serious, ongoing violations of federal, state, and municipal law, including breaches of Colorado's implied warranty of habitability, the Fair Housing Act, and various consumer protection laws. These violations occurred during his tenancy at The Avantus Apartments ("the Property") in Denver, Colorado, and continue to the present day. This amended complaint focuses on sustained misconduct by the Property's owners—Abacus Capital Group, LLC; AMFP V Central Park, LLC; and Michael Sarno (collectively, the "Owners")—and their agents, including former managers Sako and Partners Lower Holdings, LLC; Asset Living, LLC; Michael S. McGrath; M. Ryan McGrath; and Shanna Martinez (collectively, the "Managers"), all referred to herein as "Defendants."

Plaintiff has overwhelming evidence to prove that Defendants knowingly failed to provide and maintain the property in a condition habitable for human housing as required by law and contract, including by failing to provide basic legal habitability requirements, repair dangerous plumbing and fire prevention system issues, maintain functional elevators, provide adequate heat or water, or address persistent pest infestations and rampant criminal activity. Despite multiple detailed written notices from the Plaintiff and governmental inspections documenting these violations on behalf of the Plaintiff, the Defendants chose to ignore or delay necessary repairs while continuing

to advertise and lease units under materially false pretenses while illegally collecting above market rent.

Although Asset Living, LLC is no longer the property manager, its period of management—under the direction and supervision of Abacus Capital Group and affiliated individuals—was marked by egregious failures to meet legal and contractual obligations. Many of these violations remain unresolved and continue to endanger the Plaintiff's health and safety. The Property remains subject to repeated code enforcement actions, despite efforts by the newest management company, Greystar Management Group, to implement minimal improvements.

The Owners have always, and continue to exercise control over operations, budget approvals, repairs, and leasing practices. The conditions at the Property remain unsafe, unsanitary, and in violation of municipal and state codes, with official citations issued on behalf of the Plaintiff as recently as February 10, 2025.

This Amended Complaint is based on Plaintiff's personal knowledge during his tenancy, supported by official correspondence and violations issued by Denver city agencies, email and photographic evidence taken meticulously over the past three years, deposition testimony from former employees confirming the illegal actions they were forced to take by ownership, CORA records, extensive and thorough video documentation, and declarations from other tenants. Plaintiff respectfully submits this action for adjudication of his claims and the issuance of appropriate relief.

## II. BACKGROUND

At all times relevant to this Amended Complaint, Plaintiff was a tenant in a two-building + leasing office, 900-unit, residential apartment complex (the "Property" or "Subject Property") located in the City and County of Denver at 1955 Ulster St., 1950 Trenton St., and 8008 Montview Blvd. Denver, Colorado, 80220, respectively.

The Property is owned by Abacus Capital Group, LLC; through its Colorado shell entity, AMFP V Central Park, LLC; and their shared agent, Michael Sarno ("Owners"). At all times relevant to this Amended Complaint, Owners had authorized and appointed co-Defendants Sako and Partners Lower Holdings, LLC; Asset Living, LLC; their owners Michael S. Mcgrath; M. Ryan Mcgrath; and managers such as Shanna Martinez ("Managers"); and or their subsidiaries / agents to act as general agents on behalf of Abacus Capital, AMFP V Central Park, and Michael Sarno to manage and act as landlords for the Property. The Owners are solely responsible for violations occurring after the termination of the Asset Living, and the hiring of Greystar as property managers in 2024.

Federal, State, and Municipal codes, coupled with lease agreements obligate the owners and their agents to maintain, at a bare minimum, functioning heating, running water, elevators, on-site maintenance, and working laundry facilities. The Defendants represented that the property abided by all state, local, and federal laws. *See* ("Avantus Apartments Website Amenities" https://theavantusapartments.com/amenities/); and Haubenreiser's Exhibit 342 ("Lease"). Despite the Defendants' claims and representations, they failed, routinely, to provide any of these basic habitability needs for the Plaintiff and operated in knowing and flagrant violation of multiple state, local, and federal laws.

Defendants' representations concerning the Property were designed to inform the reasonable expectations and influence the decision-making of the Public, and others, concerning the Property condition, the terms of the Lease, Defendants' performance responsibilities or obligations under the Lease (particularly with respect to the condition, maintenance, and upkeep of the Subject Property), and to induce prospective tenants to lease rental units from the Defendants or to keep current residents, like Plaintiff, living there with the promise of improvements.

Defendants knew for years, due to Plaintiff's continued emails and formal written notices of uninhabitable conditions (substantiated and formalized by official city inspection violations; *See* Haubenreiser's Exhibits 5, 7, 248, 284, etc. - Denver Department of Public Health Notices of Violations, Final Notices of Violations, and Last Notices of Violations), that substantial repairs were required with respect to the plumbing, water, heat, elevators, habitability code violations, fire code violations, and an increasingly dangerous security situation in both residential buildings. Despite this knowledge, the Defendants illegally, and willfully failed to properly fix the issues for years before finally authorizing minimal funds and performing minimal maintenance after several lawsuits were filed in 2023, 2024, and 2025.

Despite their representations, Defendants continue to systematically and pervasively fail to ensure and maintain the condition of the Property's common areas, facilities, and residential apartments as required by applicable law and their contractual obligations to their tenants and the Plaintiff. To add to the injustice, Defendants impose at least ten unlawful "junk fees" on tenants every month in addition to "rent". Many of these fees are for non-existent services such as "valet" trash, package "delivery" or "holding", administrative processing, and even a vague "real estate fee," all of which are in clear violation of lease terms, state, federal, and municipal law. Fees are also illegally charged for services residents do not even receive, which include: Administrative fee ($180.00); Trash services – doorstep ($22.00); Package services - registration ($30.00); Real estate fee ($35.00); Rent Service Fee ($8.25) etc. There is a $12.00/month pest control fee for services never provided and a $75.00 penalty for being "unprepared" when pest control never even shows. Residents are required to pay $35.00 a month to even park on their own property, and the Plaintiffs car has been booted arbitrarily ($160.00 each time) multiple times despite having parked in his spot for months without issues until Plaintiff files a complaint with management, then suddenly, boot.

Defendants retaliated against the Plaintiff, when he attempted to withhold rent or attempted to terminate his lease for uninhabitable conditions, by demanding excessive early termination penalties ("Move-Out Fees") equaling nearly two months' rent, and by requiring Plaintiff to sign non-disclosure agreements before a new lease would be offered. These retaliatory actions discouraged lawful lease termination and helped Defendants conceal systemic issues.

Plaintiff was also retaliated against with illegal lease terminations, "lost" leases, increased rent, forced and unauthorized background checks, illegally edited payment ledgers, and decreases in services and amenities like ignoring Plaintiffs work orders, complaints of major security and safety violations, and refusal to renew Plaintiffs lease contract for over two years (after illegally terminating his existing lease early) essentially keeping the Plaintiff in a state of limbo. In addition, criminal behavior by tenants living illegally and without leases next to the Plaintiff was encouraged (even after thorough documentation, police reports, warrants, etc. was provided to management by

Plaintiff); assaults and other safety/security violations against the Plaintiff were tolerated and left unresolved as retaliation for Plaintiffs complaints; this all culminated in a violent attack by a neighbor, whom the Plaintiff had been filing formal notices to management about, leaving the Plaintiff with a traumatic brain injury; worsened preexisting disabilities, and new physical and mental injuries requiring weeks in the hospital and lasting trauma to the present day.

The property continues to be operated in a way that threatens the life, safety, and health of tenants. The Plaintiff and others have suffered substantial, ongoing harm due to the Defendants' willful and egregious misconduct.

**Relief Sought**: Plaintiff seeks injunctive relief to halt collection of illegal fees and rents, to bar further deceptive leasing, and to prevent Defendants from owning or operating properties in Colorado. Plaintiff also seeks compensatory, statutory, and punitive damages, along with fees and interest, to redress the significant physical, emotional, and financial injuries sustained.

## III. PARTIES

At all relevant times, Plaintiff was a resident of the City and County of Denver, Colorado, who occupied and leased an apartment unit at the Subject Property, The Avantus Apartments, from the Defendants. Plaintiff paid all amounts alleged to be owed under the lease contract and did so to preserve his leasehold interests under the threat of illegal eviction and related filings and proceedings. Plaintiff has been subjected to Defendants' practice of leasing dilapidated apartments that fall far short of Defendants' shared duty as owners and operators to maintain the Property in compliance with their obligations under the law and form lease agreements.

**Plaintiff Haubenreiser**; still resides at the Property and pays all amounts alleged owed under the Lease in full through the present day, under the threat of being assessed the Move-Out Fee, having eviction proceedings filed against him, and to preserve his interest in the property. Plaintiff has also consistently been charged and has paid the junk fees under threat of eviction. Plaintiff has faced multiple instances of illegal retaliation in response to the formal written complaints of ongoing habitability violations which Plaintiff has filed.

There are other named Plaintiffs who have filed lawsuits against the same entities for the same circumstances. The additional Plaintiffs are Mr. Miller, Ms. Willhour, and Mr. Willhour, who currently reside at the property; and Ms. Johnson and Ms. Busby, who moved out of the Property on November 15th, 2023, and December 31st, 2022, respectively and were assessed the Move-Out Fees, junk fees, pest control charges, had their deposits wrongfully stolen, and other illegal charges by the Defendants.

Plaintiff: Jason Haubenreiser, *Pro Se*
- Address: 1955 Ulster St. #452, Denver, CO 80220
- Phone: 720-272-8457, E-mail: jhauben@gmail.com

Plaintiff: Daniel K. Miller, L/Cpl USMC (RET), *Pro Se*
- Address: 1950 Trenton Street #114, Denver, CO 80220
- Phone: 682-404-2412, E-mail: aar4ag@gmail.com

Plaintiff: Elizabeth D. Wilhour, *Pro Se*
- Address: 1950 Trenton Street #114, Denver, CO 80220

Plaintiff: Sean M. Wilhour, *Pro Se*
- Address:1950 Trenton Street #114, Denver, CO 80220
- Phone: 817-266-2045, E-mail: Seanbear817@gmail.com

Plaintiff: Katie Johnson, *Pro Se* **25-CV-00219-RTG**
- Address: 7738 E. 25th Ave. Denver, CO 80238
- Phone: 970-424-3399, E-mail: KatieMail82@gmail.com

Plaintiff: Jessica Busby, *Pro Se* **25-CV-00219-RTG**
- Address: 3227 Syracuse St. #203 Denver, CO 80238
- Phone: 720-329-6569, E-mail: BusbyJessica296@gmail.com

---

**Defendant: Abacus Capital Group, LLC** ("Abacus" or ACG) is a Colorado limited liability company with its principal office at **999 18th St., Suite 925N, Denver, CO 80202** and NY HQ listed as 100 Park Avenue Suite 3500, New York, NY 10017. Abacus Capital Group, LLC does business under the trade name Abacus Capital Group, LLC (https://www.abacuscapitalgroup.com/contact-us/). Abacus is a real estate investment company with a large concentration of assets in Colorado numbering well into the thousands. Abacus owns, operates, and otherwise reaches out to conduct business in Denver, Colorado and other jurisdictions through its more than 35,000 residential dwelling units in thirty-seven states. Plaintiff signed leases with AMFP V Central Park, LLC and Abacus Multi-Family Planning GP LLC, a subsidiary of ACG according to ACG's SEC Government filings. Specifically, Form ADV. Additionally, The Avantus is listed on ACG's, not AMFPV's, website in the portfolio section exemplifying ACG's "pride in their work" at The Avantus. (https://www.abacuscapitalgroup.com/property/the-avantus-apartments/) ACG shares an officer with AMFP V: Michael Sarno. (Colorado Secretary of State, Date and Time: 04/30/2022 12:50 PM, ID Number: 20151310327, Document number: 20221448823) and **a shared physical location**. Abacus Capital Group and its Agent Michael Sarno have final say in all expenditures, major decisions, etc.

---

**Defendant: AMFP V Central Park, LLC** is ACG's Colorado based section of the larger AMFP V property acquisition and value-add fund. (detailed multiple times at https://adviserinfo.sec.gov/firm/summary/157243). AMFP V has two addresses in CO, one as ACG at **999 18th St., Suite 925N, Denver, CO 80202** (the same address as Abacus) and one as AMFP V LLC at 1900 W Littleton Blvd, Littleton, CO 80120. AMFP V has ACG manager **Michael "Mike" Sarno** listed as agent. As such ACG has a complete hierarchical structure of direct control over AMFP's direction and actions. This is detailed the aforementioned SEC filings under form ADV and Part 2 Brochure. Michael Sarno is also a Manager at ACG and principal managing officer for AMFP V showing the clear relationship between ACG's direct management of AMFP V.

---

**Defendant: Michael Sarno** is the managing officer at ACG and principal managing officer of AMFP V Central Park, LLC according to SEC filings. These direct links within ACG's leadership

ladder highlight Michael Sarno's direct involvement in managing AMFP V and his direct work at ACG. Mr. Sarno and ACG are held liable through a shared and direct leadership with AMFP V, by having the same management necessitates, a combined knowledge and direction of an entity, and by holding positions which cannot be easily separated, especially in Mr. Sarno's case of being executive management in both companies, his face plastered all over their websites, and his registration with multiple agencies as Principle and or Agent.

- Address: 1650 Monaco, Denver CO, 80220 / **999 18th St., Suite 925N Denver, CO, 80202**
- Phone: 720-379-1800
- E-mail: Midwestacq@abacuscapitalgroup.com

---

WHY ABACUS CAPITAL GROUP, AMFPV CENTRAL PARK, AND MIKE SARNO ARE LIABLE TO PLAINTIFF JASON HAUBENREISER

Plaintiff Jason Haubenreiser, a disabled tenant, brings this action to hold Defendants Abacus Capital Group, AMFPV Central Park, and Mike Sarno accountable for their direct and controlling role in the ongoing violations of federal, state, and municipal housing laws. Despite not holding the deed to the Avantus Apartments, the owners exercise substantial control over the property, profit from Plaintiff's tenancy, had actual and constructive knowledge of life-threatening violations, and failed to remedy them. Plaintiff suffered direct and continuing harm—physically, emotionally, mentally, and financially—because of the owners' negligence, placing them squarely within the scope of liability recognized under both Colorado and federal law.

A. CONTROL, NOT OWNERSHIP, DETERMINES LIABILITY UNDER HOUSING LAW

Defendants argue that they cannot be held liable because they are not the "owner" of the property. This misstates the law. Liability under the Fair Housing Act (FHA), the Colorado Warranty of Habitability, and related statutes attaches not merely to titled owners but to any entity that exercises control over property management and tenant treatment.

In *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982), the U.S. Supreme Court held that the FHA applies broadly to those who control housing practices, not just owners. Plaintiff, a disabled tenant, was subjected to a pattern of unsafe, inaccessible, and unsanitary housing conditions directly tied to the owners management directives, which included denial of budget for repairs and negligent oversight of management companies. In *Burrell v. Burch*, 948 F.2d 980, 985 (5th Cir. 1991), the Fifth Circuit held that non-owners involved in management and tenant relations can be liable under the FHA. Likewise, *Gashi v. Grubb & Ellis Prop. Mgmt. Servs., Inc.*, 801 F. Supp. 2d 12, 15 (D. Conn. 2011), reaffirmed that liability attaches to property managers and administrators of leases. Plaintiff interacted with staff trained under the owners policies and was affected by decisions made at the owners' direction.

B. ABACUS EXERCISED SUBSTANTIAL CONTROL OVER THE PROPERTY AND CAUSED PLAINTIFF DIRECT HARM

Abacus, AMFPV Central Park, and Mike Sarno had financial and managerial control including setting maintenance budgets, directing managerial hiring and firing, and authorizing capital repairs. This control is sufficient to establish liability under Colorado law. In *Panzlau v. Adams Cnty. Hous. Auth.*, 527 P.3d 440, 450 (Colo. App. 2022), the court made clear that entities exercising operational and repair control bear responsibility for habitability violations. Here, Plaintiff submitted documented repair requests regarding heating, mold, pests, and broken doors. Many

were either denied, ignored, or inadequately addressed under the owner's control. Plaintiff specifically requested that owners and their legal departments be informed of his written notices of violations; he sent emails, formally served the owners, etc. Plaintiff also obtained deposition testimony from managers that Abacus, AMFPV Central Park, and Mike Sarno have final say in all major decisions. *Premo v. Martin*, 119 P.3d 785, 792 (Colo. App. 2005), held that agents and managers who fail to ensure legal compliance are liable in negligence. The owners, by overseeing and perpetuating these dangerous conditions, became directly responsible. In *Lassiter v. City of Philadelphia*, 716 F.3d 53, 58 (3d Cir. 2013), courts found that de facto landlords—entities that functionally operate housing—must meet legal obligations. The owners acted in that capacity and must be held to those standards.

## C. OWNERS PROFITED FROM PLAINTIFF'S TENANCY WHILE PROVIDING UNINHABITABLE CONDITIONS

Plaintiff paid full rent under the belief that the property would meet basic legal standards and contractual obligations. The owners, as the controlling financial stakeholders, accepted rent while knowingly allowing conditions to worsen. This resulted in unjust enrichment. Under Colorado law, a party cannot retain the benefits of an enterprise while shirking its legal duties. *DCB Constr. Co. v. Cent. City Dev. Co.*, 965 P.2d 115, 119 (Colo. 1998). The owners were unjustly enriched by Plaintiff's payments and should be required to disgorge those benefits. In *Carroll v. City of Mt. Clemens*, 139 F.3d 1072, 1074 (6th Cir. 1998), the court held that financial beneficiaries of rental operations are responsible for ensuring lawful conditions. Plaintiff's rent supported the owners, and the owners had the duty to ensure Plaintiff's rights were protected.

## D. ABACUS IS LIABLE IN NEGLIGENCE FOR FAILING TO EXERCISE REASONABLE CARE

In addition to statutory and contractual duties, Owners owed a common law duty of care to the Plaintiff. By exercising operational and financial control over the property, Owners assumed a duty to act reasonably in ensuring tenant safety and habitability. The Colorado Supreme Court has made clear that where an entity assumes control over property, it assumes legal responsibility for conditions that foreseeably cause harm. See *Fogle*, 431 P.2d at 35; *Premo*, 119 P.3d at 792. The owners conduct breached this duty. They ignored known hazards, refused reasonable repairs, and allowed conditions to persist that endangered the life, health, and well-being of Plaintiff, a disabled individual. These actions constitute negligence per se and common law negligence.

## E. OWNERS KNEW OF THE VIOLATIONS AND FAILED TO ACT

Plaintiff submitted emails, photos, repair tickets, and complaints regarding leaks in his ceiling, toxic mold, pest infestations, HVAC failures, prolonged and incessant elevator outages, and egregious security issues. The owners were copied on or directly involved in addressing these matters but failed to do so. Under *Fogle v. Malvern Courts, Inc.*, 431 P.2d 29, 35 (Colo. 1967), an entity that knows about hazardous conditions and fails to act is liable for resulting harm. Further, *Niedert v. Rieger*, 52 P.3d 1045 (Colo. 2001), holds that constructive knowledge—where a party should have known—is enough to support negligence liability. Plaintiff has provided evidence of both actual and constructive knowledge by the owners. Colo. Rev. Stat. § 38-12-503 requires that any controlling party remedy habitability defects once on notice. The owners repeatedly ignored or refused to fund essential repairs that directly affected Plaintiff.

## F. OWNERS ENGAGED IN DECEPTIVE PRACTICES UNDER THE COLORADO CONSUMER PROTECTION ACT (CCPA)

The owner's website and leasing materials described the property as safe, updated, secure, and amenity-rich. These representations induced Plaintiff to lease and remain in his unit, expecting changes which were promised by Defendants, but never materialized. None of the promised features existed or came to fruituion. *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146 (Colo. 2003), confirms that deceptive business practices violate the CCPA. In *Hall v. Walter*, 969 P.2d 224, 234 (Colo. 1998), misstatements about real property were found to violate the CCPA, and *Lauterbach v. Shiley, Inc.*, 272 F.3d 1138, 1143 (10th Cir. 2001), held that consumer fraud can arise from misrepresentations impacting safety. Plaintiff was misled and harmed by the owner's misstatements, physically, mentally, emotionally, and financially.

## G. PLAINTIFF WAS RETALIATED AGAINST FOR ASSERTING RIGHTS

After Plaintiff reported habitability violations and contacted city officials, the owner's agents were directed to issue false lease violations, threaten eviction, illegally edit payment ledgers, refuse to address illegal activity occurring near and to Plaintiff, allow vagrants to live in units and halls next to Plaintiff, withhold necessary accommodations, etc. These actions were taken to punish Plaintiff for asserting legal rights and to force Plaintiff to self-evict. Colo. Rev. Stat. § 38-12-509 prohibits retaliation for good-faith complaints. Plaintiff acted within his rights and was harmed, repeatedly, as a result. In *McIntosh v. Murphy*, 469 P.3d 456, 463 (Colo. App. 2021), retaliation may be inferred from adverse actions following protected tenant conduct. And in *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006), the U.S. Supreme Court held that retaliation includes any conduct likely to dissuade a reasonable person from exercising their rights. Plaintiff's claims fit squarely within this standard.

## H. THIS COURT SHOULD REJECT OWNER'S DEFENSES AND HOLD BAD ACTORS ACCOUNTABLE

Defendants contend that Plaintiff has not shown a sufficient nexus between the owners and the alleged harms. This is false. The record shows that the owners directed key operations, profited from illegal practices, willingly ignored safety complaints, knowingly misrepresented the property, and intentionally retaliated against Plaintiff. Federal and state law do not allow controlling entities to avoid liability while benefiting from tenant payments and enabling abusive practices. The Court should apply controlling precedent from *Havens*, *Panzlau*, *DCB Construction*, and *Rhino Linings* to recognize the owners' liability. Plaintiff has stated valid claims, backed by graphic and undeniable evidence, and rooted in well-settled law. The owners must answer for their role in violating Plaintiff's rights and contributing to the unsafe, unlawful, and reprehensible conditions at the Avantus Apartments.

## CONCLUSION

Abacus, AMFPV, and Mike Sarno cannot escape liability by hiding behind corporate form. They exercised control, ignored violations, retaliated against a disabled tenant, and profited from unsafe conditions. The law is clear: when a party causes or perpetuates unlawful housing conditions, it must be held accountable. Plaintiff respectfully requests that the Court deny any motion to dismiss and permit these claims to proceed to discovery and trial.

**Defendant: Asset Living, LLC** is a Colorado Foreign LLC with a principal office address listed with the Colorado Secretary of State as 7600 E. Orchard Rd. #200N, Greenwood Village, CO 80111 and HQ address as 7600 E. Orchard Rd. #200N, Greenwood Village, CO 80111 and a HQ based address as Asset Living, LLC, 945 BUNKER HILL RD, FL 14. Houston, TX 77024. Asset Living LLC is related to Asset Plus LLC and the related companies (Asset et Asset(s)) are owned by Sako and Partners Lower Holdings LLC, a NY based firm whose existence and relation to Asset is from filings in Texas and Florida. Asset living acquired The Avantus's previous management entity Echelon Property, LLC in January of 2020 (https://www.assetliving.com/blogs/asset-living-acquires-denver-based-echelon-property-group). Asset is/was under Asset Plus LLC and Asset Living, LLC. Asset's important members include M. Ryan Mcgrath (COO and Principal) and his father Asset Plus's Founder and Asset Living CEO Michael S. Mcgrath.

**Defendant: Sako and Partners Lower Holdings, LLC** is a management firm under Asset Living (Formerly Asset Plus) otherwise listed or know as Asset Multi. Details are obscured or hidden as Sako and Asset are privately held companies without SEC requirements to file. Since Sako owns and directs Asset as well as having the same manager, M. Ryan McGrath, this indicates that Sako cannot have been totally unaware of Asset's actions. The Business address according to Florida and Colorado filings is Sako and Partners Lower Holdings, LLC, 945 BUNKER HILL RD, FL 14. Houston, TX 77024 which is the same HQ address as Asset Living.

**Defendant: Michael S. Mcgrath** is the Founder, CEO, and Owner of Asset Living LLC (formerly founded as Asset Plus in the 1980s) and gives orders directly to his son who follows unquestioningly, even though the directions are illegal and immoral. Mcgrath is a key person in Asset Living's management, daily operations, and is therefore responsible for Asset's actions at their various managed properties and through their various shell entities which Mcgrath has struggled mightily, though sloppily, to obfuscate.
- Address: 514 Lindenwood Dr. Houston, TX 77024

**Defendant: M. Ryan Mcgrath** is the COO, son, and Principal of Asset Living (formerly Asset Plus). His positions, given by his father, grant direct oversight over the operational procedures of Asset and its subsidiaries, and as such, Standard Operating Procedures (SOPs) would be enacted by him and his father. His directions were given to and directed towards the managers like Shanna Martinez, and as such he, and his daddy, should be held responsible for permitting and encouraging such criminal behavior in their own company. Defendants put on a face of goodwill, morality, and smiles; all to hide the predators they truly are. Mcgrath was emailed directly about the formal notices of habitability violations sent by the Plaintiff multiple times.
- Address: 281 Bryn Mawr Cir. Houston, TX 77024

**Defendant: Shanna Martinez** is the manager working for Asset Living and was formerly head manager at The Avantus during the time in which Asset Living was responsible for the property. Through her actions and inaction, the apartment complex was allowed to deteriorate to legally uninhabitable levels, although tenants were still living in such conditions. She has, on record, remarked on her ability to edit the rental ledger, to doing so with Plaintiff' ledgers, and to "losing" tenant's rental agreements or leases. She also made statements to tenants about paying off City inspectors and officials, filed illegal evictions against tenants without cause, and willfully

committed other illegal actions as former employees and multiple witnesses have and will testify to.

- Address: 56303 E. 24th Pl., Strasburg, CO 80136
- Phone: 303-802-0247

## IV. JURISDICTION AND VENUE

**Jurisdiction:** This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the case arises under the laws of the United States, specifically 42 U.S.C. § 1983, and under 28 U.S.C. § 1367, which grants supplemental jurisdiction over related state law claims. This Court also has jurisdiction over Defendants pursuant to C.R.S. § 13-1-124(1)(a) and (c) because Defendants transact business and own, use, or possess real property situated in this state.

**Venue:** Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in the City and County of Denver, Colorado, and the Defendants are subject to personal jurisdiction in this District. The residential lease between Plaintiff and Defendants was entered into, set to be performed in, and concerns real property located within the City and County of Denver.

## V. GENERAL ALLEGATIONS AND SUPPORTING FACTS

Plaintiff Jason Haubenreiser is a tenant and disabled individual who resided at the Avantus Apartments, located at 8008 Montview Blvd., Denver, Colorado, during the time period relevant to this complaint. He brings this action as a direct victim of the Defendants' unlawful conduct and gross mismanagement.

In January 2020, the Avantus Apartments were acquired and managed by a network of interrelated entities: Abacus Capital Group, LLC ("Abacus"), AMFP V Central Park, LLC (a fund owned and controlled by Abacus), Michael Sarno (Abacus and AMFP V's managing executive), and the property management structure composed of Sako Partners Lower Holdings, LLC and Asset Living, LLC, managed by Michael S. Mcgrath, M. Ryan Mcgrath, and Shanna Martinez.

While Abacus seeks to avoid liability by claiming AMFP V Central Park is a separate entity, Plaintiff has submitted evidence showing Abacus shares office space, staff, and ownership control over AMFP V Central Park, establishing clear corporate and actual unity. As courts have recognized, corporate separateness is disregarded when used to shield liability while maintaining operational control. See *In re Phillips*, 139 P.3d 639, 643 (Colo. 2006).

Plaintiff submitted repeated formal written notices of dangerous and illegal conditions directly to Defendants including Michael Sarno and Abacus officials, the McGraths, Shanna Martinez, and other managers. These included habitability violations confirmed by City inspectors, CORA documents, and <u>inspection citations issued as recently as February 10, 2025.</u>

At all times relevant, Asset Living, LLC and Sako Partners acted as general agents and property managers on behalf of the property owners, including Abacus, AMFP V, and Mike Sarno. Even after Asset Living was terminated in 2024, Abacus, AMFP V Central Park, and Mike Sarno continued to own, operate, and exercise direct control of the property and failed to address the dangerous conditions or provide sufficient resources to new management.

Defendants implemented a standardized, non-negotiable lease agreement used for all tenants, including Plaintiff. This contract ("Form Lease") is one of adhesion, presented to Plaintiff only after incurring sunk costs, such as administrative fees. See *Dougherty v. Wonderland Homes, Inc.*, 2010 WL 3021629 (Colo. App. July 29, 2010) (noting the oppressive nature of take-it-or-leave-it housing contracts).

The Form Lease includes clauses that impose junk fees (including pest control, administrative, and move-out fees), waive critical rights (such as jury trial, or right to bring class actions), and purport to disclaim basic legal duties. See *Rhino Linings USA, Inc. v. Rocky Mtn. Rhino Lining, Inc.*, 62 P.3d 142, 148 (Colo. 2003) (CCPA prohibits deceptive contractual practices).

Plaintiff experienced numerous health and safety hazards including trash accumulation, sewage backups, pest infestations, broken elevators, inoperative heating and water systems, ADA violations, security failures, and unchecked criminal activity.

Despite Plaintiff's repeated efforts to notify management and city agencies, Defendants failed to address or remedy the conditions. This failure persisted even after receiving multiple administrative citations and Final Notices from the City of Denver.

Defendants, including Abacus and the McGraths received formal written communications from Plaintiff and were aware or should have been aware of the continuing harm and life-threatening danger these conditions posed to tenants. As established in *Niedert v. Rieger*, 52 P.3d 1045 (Colo. 2001), constructive knowledge imposes a duty to act. Abacus failed to do so.

Plaintiff and others who submitted formal complaints were met with retaliation, including eviction threats, lease tampering, illegal fees, and refusal to make reasonable accommodations. These actions constitute retaliation under C.R.S. § 38-12-509 and disability-based discrimination under the Fair Housing Act (42 U.S.C. §§ 3601–3619).

Specific ADA violations included inaccessible or unsafe elevators, lack of ramp access to common areas, broken fire exits, and excessive false fire alarms. These conditions denied Plaintiff, who has mobility impairments and extreme PTSD, equal access and safety. Abacus and its agents refused to make reasonable accommodations despite repeated written requests, violating 42 U.S.C. § 12182(b)(2)(A)(ii).

Plaintiff has medical documentation of his qualifying conditions and service animal certification. Plaintiff was forced to rig emergency escape equipment due to fire hazard fears, evidencing the severe emotional and physical toll caused by Defendants' willful misconduct.

Multiple assaults, break-ins, and acts of organized criminal activity occurred at the property, many of which targeted Plaintiff and other Plaintiffs specifically. Most notably, Plaintiff Jason Haubenreiser was violently ambushed and assaulted on the property after repeatedly warning management and ownership of escalating threats, criminal activity, and dangerous tenants. Plaintiff submitted dozens of formal written reports over more than three years, including timestamped emails, photographs, video footage, and inspection records detailing the escalating threats and organized criminal presence. These reports were submitted directly to Abacus Capital, Michael Sarno, The McGraths, Martinez, and other key Defendants. Plaintiff specifically warned that the

criminal activity was being unlawfully concentrated near his unit by the Defendants, that he had received threats, and that the situation was becoming increasingly dangerous. Despite this, no protective measures were taken, and no meaningful efforts were made to remove or address the dangerous individuals. This inaction was taken purposefully, after Defendants started moving problem tenants next to Plaintiff and allowing vagrants to illegally squat in the units next to Plaintiff in retaliation for his complaints and to exacerbate his disabilities in the hopes he would self-evict.

The violent and brutal assault resulted in Plaintiff suffering a broken jaw, traumatic brain injuries (TBI's), and a potential stroke, requiring hospitalization for over a week. These life-altering injuries were a direct and foreseeable consequence of the Defendants' gross negligence and willful indifference to safety. The volume, specificity, and urgency of Plaintiff's complaints created not only actual but also legally constructive knowledge under state, federal, and municipal laws, imposing a duty to act. Instead of helping, the Defendants engaged in retaliatory tactics—tampering with lease ledgers, attempting to evict Plaintiff on false grounds, manipulating rent ledgers, issuing fraudulent notices, and worsening already unsafe conditions—all in an effort to force Plaintiff to self-evict.

Moreover, these retaliatory actions were part of a broader pattern by Defendants to suppress tenant complaints and avoid the costs of lawful repairs and enforcement. Defendants systematically targeted Plaintiff, a known whistleblower and disabled tenant, by escalating abuse and retaliation because of his documented efforts to hold them accountable. Their failure to implement basic crime deterrence measures—such as functional lighting, locking exterior doors, or removing known violent tenants, even tenants with active warrants—demonstrates deliberate indifference. The Defendants were fully aware that Plaintiff's life was at risk and actively chose to disregard, and encouraged the resulting consequences.

Plaintiff's extensive documentation efforts—photos, videos, formal notices, and city reports—are part of the record and show Defendants' sustained refusal to act. Plaintiff risked personal safety, devoted hundreds of hours, and sacrificed health and well-being in order to create a complete evidentiary record. No rational property manager or owner could claim ignorance in the face of this overwhelming evidence. That Defendants remained inert only further underscores the egregious nature of their misconduct.

Based on these facts, Plaintiff asserts claims for negligence, breach of the warranty of habitability, violations of the Americans with Disabilities Act, violations of the Fair Housing Act, retaliation, and violations of the Colorado Consumer Protection Act, among others.

Plaintiff has satisfied all pleading requirements under Fed. R. Civ. P. 8(a) and has established a strong legal and factual basis for each claim. Defendants' arguments that they lacked control, responsibility, or knowledge are directly contradicted by overwhelming evidence. Plaintiff respectfully requests that this Court reject the Defendants' motion to dismiss and permit this matter to proceed to discovery and trial.

## FACTS SPECIFIC TO MR. HAUBENREISER

From January 2020 to the present, Plaintiff Jason Haubenreiser has endured egregious, well-documented violations of local, state, and federal law by the Defendants, resulting in physical injury, emotional trauma, financial loss, and violations of his federally protected rights as a disabled tenant. Contrary to Defendants' contentions that they were unaware or lacked responsibility for these violations, Plaintiff submitted voluminous evidence—via timestamped emails, photographs, video files, CORA requests, city inspection reports, and formal legal notices—on a regular and escalating basis. Despite this avalanche of specific, credible documentation, Defendants not only failed to act but also retaliated against Plaintiff for attempting to enforce his rights under the law. The evidence will support each claim as laid out in counts I through XXXI. Several specific instances follow with a full list in Haubenreiser's *Exhibit List*:

- September 29th, 2020, Haubenreiser emailed Defendants notice of his disabilities and requirement for a service animal to get Defendants to remove the pet junk fee. Haubenreiser suffers from PTSD, severe anxiety, depression disorders, and mobility issues as confirmed by medical letters of need for accommodation from his doctors.
- Second Week of February 2021, Plaintiff's elevator, directly across the hall from Haubenreiser's apartment, became inoperable for more than a month. Haubenreiser went to the management office, but the manager was unavailable, so he submitted a work order and left several written notes for the Defendants. The issue with elevators being down for extended periods persisted pervasively throughout his tenancy affecting his mobility, exacerbating his medical conditions, and interfering with his life, health, and safety with violations outstanding to the Present day.
- Starting noticeably around February 2021, Plaintiff Haubenreiser's hall was filled with rancid and festering trash, which began accumulating in the basement, overflowing in dumpsters, and was directly outside his door due to a trash chute which was purposefully locked by the Defendants. The odors became unbearable and could be smelled within Plaintiff's unit. Despite weekly visits to the office and leaving notes about the smell, roaches, and biohazards, the issue persisted. Photographic evidence was documented, along with city citations for violations.
- Throughout 2021, conditions throughout the property continued to deteriorate while maintenance and services also decreased; criminal activity skyrocketed due to less security and non-functioning exterior doors which Defendants failed to fix; habitability and other violations spiraled out of control; city violations ramped up as tenants became slowly and painfully aware that they needed to protect themselves from the Defendants with documentation.
- January 2nd, 2022, Mr. Haubenreiser issued a formal complaint with the City's Department of Public Health and Environment and the Defendants for habitability violations in common areas like trash, pests, safety and fire code violations, non-working elevators and no heat or running water in his unit U452.
- January 7th, 2022, the Defendants receive a Notice of Violation from the City confirming Haubenreiser's habitability complaints.
- January 12th, 2022, heat and running water is still not restored.
- February 22, 2022, a Final Notice of Violations is issued to the Defendants regarding common area violations.
- April 28th, 2022, the City begins an investigation into the Avantus Apartments because of the number of complaints received.
- May 23rd, 2022, Haubenreiser documents leaks and damage in his ceiling from work roofers have done and leaves several notes at the office after calling emergency maintenance multiple times to no avail and having work orders canceled.

- June 3rd, 2022, Haubenreiser documents his microwave being broken for over a week despite work orders and written notices left with manager after calls left unanswered.
- July 7th, 2022, Haubenreiser documents ceiling still leaking despite multiple written notices and demands made to Defendants by the city inpectors.
- Through 2022 Haubenreiser continues to send written notices of Habitability to the Defendants which go unanswered, as severe safety violations continue both within his unit and in common areas due to unchecked crime in the building which forces Haubenreiser to document.
- February 2nd, 2023, Defendants receive more Administrative Citations from the City for rampant violations throughout the property.
- Throughout 2023 habitability and safety violations continue to escalate to severe and life-threatening levels. Elevators don't work throughout the entire property, trash is piled as high as people in all common areas, cleaning is not done, security continues to deteriorate resulting in rampant crime, break-ins, vagrants, and open/ notorious criminal activity so bad that Denver Police install a gunshot detection system (shot spotter) on the roof of Plaintiffs building. Fire code violations are incessant as alarms go off weekly and people have open flames on the property. Parties over 120Db, gunfire, assaults, meth labs, etc.
- June 14th, 2023, the leak in Haubenreiser's ceiling (05/23/2022) is still not fixed despite multiple written notices and meetings between management and city inspectors issuing citations on Plaintiffs behalf.
- July 27th, 2023, leak is finally fixed after city officials demand Defendants do something.
- October 22nd, 2023, Haubenreiser begins formalizing email complaints to Defendants and threatening legal action. These emails were sent directly to Abacus Capital, Michael Sarno, Ryan Mcgrath, and Shanna Martinez. Plaintiff also formally requested Shanna Martinez to have Abacus, Michael Sarno, and her managers, the McGraths reach out directly about the formal notices. Discovery shows decision making and expenditure approvals refused by Abacus.
- November 3rd, and throughout 2023, Plaintiff begins experiencing negative treatment from Defendants in response to his complaints. Here, Defendants "lost his lease" and force Haubenreiser to undergo another lease screening as if he were a new tenant. Plaintiff is also forced to sign non-disclosure agreement before another lease will be offered to him. Defendant Shanna Martinez testified this was done on the Owners' orders. Next, Defendants begin to move in problem tenants next to Plaintiff, allow vagrants to break into and live beside Haubenreiser, and refuse to do anything about documented criminal behavior or otherwise discriminate and unequally treat Plaintiff relative to other tenants because of his complaints.
- November 6th, 2023, Haubenreiser has proof the "lost lease" was a lie, he has a valid lease, and the lease renewal process and non-disclosure requirements were illegal.
- November 8th, 2023, Defendants double Haubenreiser's rent overnight, even though he has a valid lease.
- November 13th, 2023, Haubenreiser sends Formal Demand Letter specifically addressed to the individual Defendants.
- November 15th, 2023, Haubenreiser's washer and dryer are not working for months, and service requests are being canceled or falsely "completed" by Defendants.
- November 20th, 2023, Haubenreiser continues to document and screenshots maintenance requests that are cancelled, or falsely "completed."
- November 26th, 2023, Haubenreiser screenshots Defendants canceling and falsely "completing" his repeated service requests for washer and dryer.

- December 01st, 2023, Haubenreiser's rent is wrong, again. Haubenreiser experiences vastly disparate and discriminatory treatment from Defendants in relativity to other residents.
- December 7th, 2023, Defendants ban Haubenreiser from common areas and leasing office for his complaints and documentation.
- December 31st, 2023, Defendants serve Haubenreiser with a wrongful and illegal eviction notice.
- February 20th, 2024, Defendants serve Haubenreiser with a second wrongful and illegal eviction notice.
- March 01st, 2024, Plaintiff must help carry children in wheelchairs up and down stairs because all elevators are broken throughout the entire property. Plaintiff Haubenreiser's neighbors are also becoming increasingly violent, exhibiting more rampant criminal activity, and are a danger to Haubenreiser's life and safety because of specific, credible, imminent, and documented threats to Haubenreiser and other neighbors because of their documentation and complaints to Defendants to do something.
- March 10th, 2024, Haubenreiser documents no hot water for months.
- March 11th, 2024, City officials confirm Haubenreiser still has uncorrected habitability violations and issues more notices.
- March 15th, Haubenreiser's washer and dryer are still not working. Defendants refuse to address his service requests and written notices.
- March 18th, 2024, City Fire Inspector confirming fire systems have been broken for years and that elevators have been being "maintained" by unlicensed vendors illegally hired by management and owners.
- March 25th, 2024, Defendant Owners terminate Asset Living.
- March 28th, 2024, Haubenreiser still has uncorrected habitability violations with multiple notices from the city. Haubenreiser also sends emails to new managers about ongoing violations. These emails and formal notices of violations continue to become more urgent and serious as threats to the Plaintiffs life and safety, and the impact on his disabilities, become more visceral and imminent (April 5th, 8th, 2024 emails, etc.)
- April 9th, 2024, City issues new management notices of uncorrected habitability violations on behalf of Haubenreiser
- April 28th, 2024, Haubenreiser is almost killed by the neighbors he complained formally to Defendants about for months. Plaintiff spends more than a week in the hospital, has severe Traumatic Brain Injuries, a potential stroke, and a broken jaw. Plaintiff's PTSD and other disabilities continue to worsen.
- June 12th, 2024, another notice of uncorrected habitability violations reported on behalf of Haubenreiser. Neighbors continue to threaten Haubenreiser and engage in criminal activity which Haubenreiser reports and documents.
- September 16th, 2024, Haubenreiser has even more proof of extreme criminal activity of neighbors and the Defendants' willful and illegal inaction. In this case, Haubenreiser's neighbor who is living in the unit next to Plaintiff illegally, and who Plaintiff has reported to management and owners multiple times, is on the balcony only feet in front of Haubenreiser's daughter, masturbating.
- October 23rd, 2024, City Inspectors from the Department of Public Health and Environment falsified a report which "cleared" violations. Plaintiffs Miller and Haubenreiser emailed the inspectors and a supervisor to come inspect in the Plaintiff presence, which inspectors and a supervisor did two days later. Upon re-inspection with Plaintiff, it was found that none of the

violations were cleared/fixed in reality, and inspectors issued another notice of violation instead of another administrative citation which should have occurred. This faulty report reset timelines for the Defendants to fix severe habitability issues that were at the level of administrative citation for repeated failures on re-inspection. Shanna Martinez would brag to tenants that management and owners were paying off city inspectors. This explains how the CORA reports are so rampant, unabated, severe, and life threatening and yet nothing is done to hold Defendants accountable. Payoffs, falsified reports, conspiracy, and collusion.

- January 1st, 2025, security doors are still non-functional. City Inspectors confirm there are open violations in relation to this habitability violation.
- February 10th, 2025, Violations and citations from City officials continue to the present day which Plaintiff continues to document. Most recently, the Plaintiff and all other tenants were without heat for several weeks during the coldest days of the winter as confirmed by city inspections of Plaintiffs unit, which confirmed the violations as recently as February 10th, 2025.
- April 22nd, 2025, Plaintiffs stove is inoperable for several months, security doors are still broken, elevators are down, and security has been let go. Plaintiffs PTSD and other disabilities are worsened as Plaintiff anticipates the chaos to come as things deteriorate again.

Each of these events ties directly to Plaintiff's injuries, exacerbated disabilities, or deprivation of his rights. The record is not only detailed and specific—it is overwhelming. Defendants' pattern of ignoring reports, denying accommodations, retaliating, and falsifying lease obligations reflects not just bad faith, but a legally cognizable campaign to silence and displace Plaintiff through coercion and neglect. The Plaintiff and city inspectors issued formal notices and the Defendants' conduct satisfies the standards for actual and constructive knowledge under *Niedert v. Rieger*, 52 P.3d 1045 (Colo. 2001), and supports claims for negligence, IIED, FHA and ADA violations, and breach of contract.

Plaintiff respectfully requests the Court recognize that the specificity, duration, and severity of his factual allegations—combined with supporting documentation and municipal confirmations—far exceed pleading standards under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The claims are not only plausible; they are compelling.

## VI. CLAIMS AND CAUSES OF ACTION

---

## CLAIM I: VIOLATIONS OF THE WARRANTY OF HABITABILITY (C.R.S. §§ 38-12-501 et seq.)

**Elements:** Under Colorado's Warranty of Habitability statute, C.R.S. §§ 38-12-501 et seq., a tenant must show:

1. A residential lease or rental agreement existed between Plaintiff and Defendants;
2. The premises were or became uninhabitable as defined by the statute;
3. The condition materially interfered with the tenant's life, health, or safety;
4. Defendants failed to timely remedy the condition after receiving notice.

**Application to Plaintiff and Nexus to Each Defendant:**

**Landlord-Tenant Relationship**: Plaintiff Jason Haubenreiser entered into residential lease agreements with entities managed and controlled by Asset Living, LLC, Shanna Martinez, Michael S. McGrath, and M. Ryan McGrath, acting on behalf of ownership entities Abacus Capital Group,

LLC, AMFP V Central Park, LLC, and Michael Sarno. These Defendants, individually and through agents, exercised control over the premises, accepted rent, and directed the handling—or mishandling—of maintenance and safety obligations.

**Uninhabitable Conditions**: The premises were consistently uninhabitable, including: Sewage backups into apartments and common areas; Rampant mold, violations of Colorado housing and health codes; Rodent and pest infestations in living and shared spaces; Broken heating, water, and security systems, including extended periods without hot water or functional entry locks; Documented criminal activity and assaults, enabled by Defendants' failure to enforce safety protocols. These conditions violated C.R.S. § 38-12-505(1)(a)–(c) and posed immediate threats to the life, health, and safety of the Plaintiff.

**Material Interference**: Plaintiff's use and enjoyment of the property were severely impaired. Multiple residents—including Plaintiff Jason Haubenreiser, as well as similarly situated tenants—suffered documented harm due to conditions that made the property dangerous, unsanitary, and psychologically traumatizing. Plaintiff, a disabled individual with mobility and mental health impairments, was forced to live amid persistent hazards that exacerbated his symptoms and prevented safe occupancy.

**Notice and Failure to Remedy**: Plaintiff provided Defendants with: Written maintenance requests, Email and video evidence, CORA-obtained records, Direct complaints to Denver Code Enforcement and the Fire Department, Joint police reports and inspection records showing the persistence of life-threatening conditions. Despite this, Defendants collectively failed to remedy these conditions within a reasonable time, often falsifying records or retaliating against Plaintiff instead of acting in good faith to make repairs.

Asset Living, LLC and its managers (Shanna Martinez, Michael S. McGrath, and M. Ryan McGrath) directly controlled daily maintenance decisions and refused to act on complaints, despite statutory obligations. Abacus Capital Group, LLC, AMFP V Central Park, LLC, and Michael Sarno maintained full access to maintenance logs, expense approvals, resident complaints, and third-party reports. These Defendants failed to provide resources or direction to resolve habitability concerns and in doing so, enabled and perpetuated the statutory violations.

**Conclusion:** Defendants' willful refusal to provide habitable living conditions, even after receiving extensive written notice, represents a clear and repeated violation of Colorado's Warranty of Habitability. Defendants' conduct was reckless, retaliatory, and systematic.

Plaintiff respectfully requests that this Court: Award compensatory and statutory damages under C.R.S. § 38-12-507(1); Grant injunctive relief compelling compliance with habitability obligations; Award attorneys' fees and litigation costs as permitted by statute; And provide any further equitable or punitive relief this Court deems just and necessary to address the egregious violations and protect other tenants similarly situated.

---

## CLAIM II: VIOLATIONS OF THE FAIR HOUSING AMENDMENTS ACT (42 U.S.C. § 3604(f))

**Elements:**
Under the Fair Housing Amendments Act (FHAA), 42 U.S.C. § 3604(f), Plaintiff must show:

1. Plaintiff is a member of a protected class (e.g., disabled);
2. Defendants discriminated in the terms, conditions, or privileges of rental of a dwelling or in the provision of services;
3. The discrimination was on the basis of Plaintiff's protected status.

**Application to Plaintiff and Nexus to Each Defendant:** Plaintiff Jason Haubenreiser is a disabled individual under federal law. He suffers from mobility impairments due to a parachuting-related ankle injury and has PTSD, anxiety, and other psychological conditions—all of which are documented and disclosed to Defendants through repeated written notifications, service animal registrations, and formal accommodation requests.

**Discriminatory Conduct Based on Disability:** Defendants discriminated against Plaintiff by: Failing to repair non-functional elevators, leaving disabled residents without ADA-compliant access to their homes for weeks at a time; Ignoring written and verbal accommodation requests, including repair tickets, service animal registrations, and formal complaints about accessibility barriers; and retaliating against Plaintiff by disabling his resident portal, denying him access to management offices (despite his disability status), falsifying records, and encouraging harassing or unsafe neighbors to remain near him. These actions were not isolated incidents—they represent a pattern of discriminatory treatment based on Plaintiff's disabilities.

**Nexus to Specific Defendants:** Asset Living, LLC, Shanna Martinez, Michael S. McGrath, and M. Ryan McGrath were the managing agents responsible for day-to-day decisions, including ignoring Plaintiff's formal ADA and FHAA accommodation requests and actively retaliating against him for asserting his rights. Abacus Capital Group, LLC, AMFP V Central Park, LLC, and Michael Sarno, as owners and policy-setters, were notified through internal reports, resident communications, and contractor estimates of the lack of accessibility and failure to provide reasonable accommodations. Despite this, they failed to intervene or allocate funding to correct the discriminatory conditions, making them liable under theories of direct and vicarious liability. Defendants' conduct constituted both disparate treatment (singling out Plaintiff due to his known disabilities) and disparate impact (maintaining policies that disproportionately harmed disabled tenants by allowing conditions like non-functioning elevators, broken security infrastructure, and lack of emergency access).

**Retaliatory Constructive Eviction Efforts:** The discriminatory practices were designed to force Plaintiff to self-evict due to his disability-related vulnerabilities, knowing that he was less likely to endure the extreme, unaccommodating conditions. Such conduct directly violates 42 U.S.C. § 3617, which prohibits interference, coercion, or intimidation against persons exercising fair housing rights.

**Conclusion:** Defendants' deliberate failure to accommodate Plaintiff's known disabilities, coupled with a pattern of retaliation and neglect, violated the Fair Housing Amendments Act (42 U.S.C. § 3604(f)). Their conduct deprived Plaintiff of equal housing rights and subjected him to unsafe, inaccessible, and discriminatory conditions that aggravated his medical conditions and caused severe harm.

Plaintiff respectfully requests: Compensatory damages; Punitive damages; Statutory damages under 42 U.S.C. §§ 3613(c)(1)–(2); Injunctive relief requiring compliance with fair housing and accessibility standards; Attorneys' fees and litigation costs under 42 U.S.C. § 3613(c)(2); and Any additional relief deemed just and appropriate by this Court.

---

CLAIM III: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (42 U.S.C. § 12101 et seq.)

**Elements:**

To prevail under Title III of the ADA, Plaintiff must show:

1. Plaintiff is a qualified individual with a disability;
2. Defendants owned, leased, or operated a place of public accommodation or otherwise interfered with Plaintiff's access or rights under the ADA;
3. Defendants failed to make reasonable modifications or accommodations to afford Plaintiff access and use of the facility; and
4. This failure resulted in harm.

**Application to Plaintiff and Nexus to Each Defendant:** Plaintiff Jason Haubenreiser is a qualified individual with a disability under 42 U.S.C. § 12102, due to both physical mobility limitations and psychiatric disabilities including PTSD and severe anxiety. Plaintiff notified Defendants in writing and verbally of these disabilities and formally requested ADA accommodations.

1. **Failure to Provide Reasonable Accommodations:**
   - **Asset Living, LLC** and its managing agents, including **Shanna Martinez**, **Michael S. McGrath**, and **M. Ryan McGrath**, failed to repair elevators and ensure ADA compliant access to Plaintiff's apartment, despite repeated written requests and medical documentation. These omissions denied Plaintiff the ability to safely access and use his home.
   - **Abacus Capital Group, LLC**, **AMFP V Central Park, LLC**, and **Michael Sarno**, as the controlling owners of the premises and parties responsible for financial and policy oversight, were aware through inspection logs, maintenance records, and formal complaints that accessibility violations existed but failed to intervene or allocate resources to cure these issues.
2. **Retaliatory Conduct Against Disabled Plaintiff:**
   - After asserting his rights under the ADA, Plaintiff was met with retaliatory actions by Defendants, including:
     - Disabling Plaintiff's resident portal (Abacus, Asset Living, Sako Partners, Mike Sarno, Shanna Martinez, and the McGraths);
     - Prohibiting contact with management staff (Abacus, Asset Living, Sako Partners, Mike Sarno, Shanna Martinez, and the McGraths);
     - Harassment and retaliation via false charges and lease manipulation (Abacus, Asset Living, Sako Partners, Mike Sarno, Shanna Martinez, and the McGraths
3. **Pattern of Indifference to ADA Compliance:**
   - Defendants failed to maintain safe and accessible common areas, including entrances, stairwells, and emergency exits. Elevators remained out of service for weeks or months. Lights were left broken in stairwells, increasing Plaintiff's risk of injury.
   - This conduct not only excluded Plaintiff from full enjoyment of the premises but directly placed him at physical and emotional risk in violation of 42 U.S.C. § 12182(b)(2)(A)(ii).
4. **Knowledge and Control by Owners and Advisors:**

- **Abacus Capital Group, LLC**, **Michael Sarno**, and **AMFP V Central Park, LLC** had direct or constructive knowledge of these accessibility violations via:
  - Monthly financial reports reflecting withheld repairs;
  - CORA responses indicating inspection failures;
  - Correspondence and invoices showing repair delays related to ADA-related infrastructure.
- Their continued retention of Asset Living and failure to cure systemic ADA violations—even after complaints were submitted to federal and municipal housing authorities—makes them jointly and severally liable under ADA Title III and related equitable doctrines.

**Conclusion:** Defendants violated the Americans with Disabilities Act by refusing to provide reasonable accommodations and failing to maintain ADA-compliant facilities. Their actions were not merely negligent but retaliatory, calculated, and discriminatory, targeting Plaintiff for asserting federally protected rights. As a result, Plaintiff experienced significant physical hardship, loss of independence, extreme emotional distress, and degradation of his legal protections. These harms are ongoing and exacerbated by Defendants' continued refusal to correct the underlying accessibility issues.

Plaintiff respectfully requests: Compensatory and non-economic damages; Punitive damages; Injunctive relief requiring immediate ADA compliance; Attorneys' fees and litigation costs pursuant to 42 U.S.C. § 12205; And any further relief deemed just and proper by this Court.

---

CLAIM IV: RETALIATION (C.R.S. § 38-12-509)

**Elements:** Under Colorado law, specifically C.R.S. § 38-12-509, a Plaintiff must establish:

1. They engaged in protected activity under the Warranty of Habitability or other tenant rights;
2. The landlord took adverse action;
3. A causal connection exists between the protected activity and the adverse action, indicating retaliation.

**Application to Plaintiff and Nexus to Each Defendant:**

**1. Plaintiff Engaged in Protected Activity:** Plaintiff Jason Haubenreiser, a legally recognized disabled tenant, repeatedly asserted his rights under Colorado's Warranty of Habitability and other applicable laws. He submitted:

- Written complaints of mold, sewage backups, lack of heat/water, nonfunctional elevators, broken locks, and life-threatening safety concerns;
- ADA accommodation requests;
- Formal documentation, including CORA-obtained emails and inspection reports, to Defendants and city officials.

These complaints were made directly to:

- **Asset Living, LLC**, its employees and managers **Shanna Martinez**, **Michael S. McGrath**, and **M. Ryan McGrath**;
- Ownership entities **Abacus Capital Group, LLC**, **AMFP V Central Park, LLC**, and **Michael Sarno**, who were responsible for compliance, funding, and oversight.

**2. Defendants Took Adverse Actions:** In response to Plaintiff asserting his rights, Defendants undertook a pattern of adverse, retaliatory actions designed to intimidate, punish, and silence Plaintiff:

- Edited and falsified Plaintiff's rent payment ledger to show false delinquencies;
- "Lost" or deleted Plaintiff's leases to claim Plaintiff had no contractual protections;
- Denied access to maintenance and the management portal;
- Threatened eviction or issued false notices based on fabricated lease violations;
- Installed violent or disruptive tenants directly adjacent to Plaintiff, including known felons with active warrants, and then ignored Plaintiff's repeated pleas and video evidence of criminal behavior and targeted threats.

These acts were not only adverse, but they were orchestrated and repeated with the intent to cause Plaintiff to abandon the premises—also known as **constructive self-eviction**.

**3. Retaliatory Intent:** Each of these actions occurred shortly after protected activity and escalated as Plaintiff continued to raise complaints. The retaliatory motive is evidenced by:

- Internal communications obtained through CORA showing acknowledgment of Plaintiff's complaints and the deliberate refusal to act;
- Patterns of abuse targeting Plaintiffs disability status and legal advocacy;
- The differential treatment of Plaintiff compared to non-disabled residents.

**Defendant Nexus and Specific Roles:**

- **Asset Living, LLC** and its managers executed the day-to-day retaliation by removing portal access, ignoring maintenance, installing hostile neighbors, and manipulating ledgers;
- **Shanna Martinez, Michael S. McGrath**, and **M. Ryan McGrath** directed or condoned retaliatory actions, including threats and documented email responses;
- **Abacus Capital Group, LLC, AMFP V Central Park, LLC**, and **Michael Sarno**, although one step removed, were decision-makers with full access to budgets, resident complaints, legal notices, and corrective authority. Their willful inaction and financial incentives created an environment that encouraged retaliation in lieu of compliance.

**Conclusion:** Defendants' actions were not just negligent—they were deliberate and coordinated efforts to punish a disabled tenant for asserting legally protected rights. These actions caused significant harm, including emotional trauma, risk to life and safety, financial loss, and fear of continued retaliation.

Plaintiff respectfully requests that the Court: Award compensatory damages for all resulting harms; Award punitive damages due to the intentional, malicious nature of Defendants' conduct; Award injunctive relief preventing further retaliation; Award attorneys' fees and costs as permitted by statute; And grant any other relief deemed just and equitable to deter similar conduct and protect tenants' statutory rights.

## <u>CLAIM V: VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT (C.R.S. §§ 6-1-101 et seq.)</u>

**Elements:** To prevail under the CCPA, a plaintiff must establish:

1. That the defendant engaged in a deceptive trade practice;
2. That the practice significantly impacted the public as actual or potential consumers;
3. That the plaintiff suffered injury in fact to a legally protected interest;
4. That the deceptive trade practice caused the plaintiff's injury. See *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146–47 (Colo. 2003).

**Application to Plaintiff and Nexus to Each Defendant:**

**Deceptive Practices:** All Defendants—Abacus Capital Group, LLC, Michael Sarno, AMFP V Central Park, LLC, Sako Partners Lower Holdings, LLC, Asset Living, LLC, Michael and Ryan McGrath, and Shanna Martinez—engaged in or ratified coordinated deceptive trade practices concerning Avantus Apartments.

- These Defendants misrepresented that the property was safe, ADA-compliant, professionally maintained, and in compliance with all applicable housing laws. Such claims were communicated to Plaintiff and the public via leasing brochures, form leases, verbal affirmations, and online advertising.
- These misrepresentations were materially false. Defendants were in possession of extensive reports, complaints, city notices, and internal records showing conditions were unsafe, unsanitary, and in violation of law. Plaintiff and others relied on those statements to enter and continue tenancy, resulting in injury.

**Nexus to Each Defendant:**

- **Abacus Capital Group, LLC** and **Michael Sarno**: Exercised top-level control over the property through financial oversight, approval of budgets, and direct communication with management staff. These Defendants had knowledge of persistent violations and deceptive advertising but continued to benefit from ongoing leasing operations.
- **AMFP V Central Park, LLC**: As the fund vehicle owned and controlled by Abacus, this entity was used to mask ownership while profiting from rent payments and permitting violations to persist. It is legally inseparable from Abacus.
- **Sako Partners Lower Holdings, LLC**, **Asset Living, LLC**, and the **McGraths**: These Defendants set, directed, and implemented marketing policies, including those regarding lease terms, promotional materials, and representations to tenants.
- **Shanna Martinez**: As the on-site manager and agent of the above Defendants, Martinez was personally responsible for communicating false information to Plaintiff regarding building safety, pest control, ADA access, and habitability.

**Plaintiff's Harm:**

- Plaintiff was directly induced to lease and remain at the property based on these deceptive representations. Plaintiff sustained physical injuries, emotional distress, and financial harm due to the actual uninhabitable and unsafe conditions concealed by Defendants' misrepresentations.

**Conclusion:** Defendants' deceptive trade practices—including misrepresentations of habitability, ADA compliance, and building safety—violated the Colorado Consumer Protection Act. Each Defendant had actual or constructive knowledge of the falsity of their claims and benefitted from the deception.

Plaintiff respectfully requests compensatory and punitive damages, statutory damages under the CCPA, injunctive relief barring future deceptive practices, attorneys' fees, and any additional relief the Court deems appropriate to prevent further public harm and redress the Plaintiff's injuries.

<u>CLAIM VI: GROSS NEGLIGENCE UNDER THE COLORADO PREMISES LIABILITY ACT (C.R.S. § 13-21-115)</u>

**Elements:** Under C.R.S. § 13-21-115, Plaintiff must establish:

1. Defendants owed Plaintiff a duty of care as a lawful tenant;

2. Defendants breached that duty through gross negligence (reckless disregard or willful indifference);
3. The breach was the proximate cause of Plaintiff's injuries or damages.

**Application to Plaintiff and Nexus to Each Defendant:**
**Duty of Care:** Each Defendant—Abacus Capital Group, LLC, Michael Sarno, AMFP V Central Park, LLC, Sako Partners Lower Holdings, LLC, Asset Living, LLC, Michael and Ryan McGrath, and Shanna Martinez—owed Plaintiff Jason Haubenreiser, a lawful tenant, a statutory and contractual duty to maintain safe and habitable conditions at Avantus Apartments.
**Breach of Duty – Gross Negligence:** Defendants willfully disregarded known life-threatening conditions over a prolonged period, including:

- **Rampant criminal activity:** Defendants received dozens of formal complaints and police reports regarding break-ins, assaults, car thefts, and gang activity. Rather than acting to improve security, they knowingly housed violent tenants and allowed known threats to live near Plaintiff.
- **Persistent maintenance failures:** Critical infrastructure—including all elevators, fire alarms, fire exits, and security doors—remained unfixed for months or years despite repeated written notices by Plaintiff and City citations.
- **Widespread health hazards:** Raw sewage backups, mold, pest infestations, and heating failures were documented by Plaintiff, city inspectors, and public CORA records.
- **Direct correlation to harm:** Plaintiff Haubenreiser was brutally assaulted on April 28, 2024, after Defendants ignored repeated formal complaints and documentation regarding credible threats. Defendants' failure to intervene or relocate Plaintiff, despite knowing the danger, constitutes gross negligence.

**Nexus with Each Defendant:**

- **Abacus Capital Group and Michael Sarno** exercised final approval on budgetary decisions, received detailed reports of hazardous conditions, and refused to fund corrective action.
- **AMFP V Central Park, LLC** acted as the investment vehicle through which Abacus held ownership and liability. Corporate records and discovery emails confirm it served merely as a shell.
- **Sako Partners and the McGraths** directed Asset Living and coordinated property operations. They set management policy and were copied on repeated internal reports warning of urgent safety failures.
- **Asset Living, LLC** was the primary day-to-day property manager, executing Sako's directives and personally receiving and ignoring Plaintiff's work orders and legal habitability notices.
- **Shanna Martinez**, as site manager, repeatedly dismissed Plaintiff's complaints, canceled work orders, and told staff not to intervene with criminal neighbors who ultimately assaulted Plaintiff.

**Causation and Damages:** Plaintiff Haubenreiser's injuries—physical trauma, PTSD exacerbation, and financial losses—stem directly from Defendants' reckless disregard. Other tenants, including Daniel K. Miller, Katie Johnson, and Jessica Busby, experienced similar injuries and threats, which were foreseeable and preventable. See *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 570 (Colo. 2008).

**Recklessness and Legal Standard:** Defendants' pattern of ignoring well-documented, repeated formal complaints, despite citations and evidence from Plaintiff, constitutes a gross deviation from the standard of care. See *Vigil v. Franklin*, 103 P.3d 322, 328 (Colo. 2004).

**Conclusion:** Defendants' gross negligence under C.R.S. § 13-21-115 directly endangered Plaintiff and caused lasting harm. Each Defendant had a defined role in this ongoing misconduct.

Plaintiff respectfully requests compensatory, punitive, and exemplary damages, along with injunctive relief to ensure the safety and well-being of all current and future tenants.

---

## CLAIM VII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**Elements:** Under Colorado law, to establish a claim for intentional infliction of emotional distress (IIED), Plaintiff must show:

1. Defendants engaged in extreme and outrageous conduct;
2. Defendants acted with intent or recklessness;
3. The conduct caused Plaintiff severe emotional distress. See *Rugg v. McCarty*, 476 P.2d 753 (Colo. 1970).

**Application to Plaintiff and Nexus to Each Defendant:**

**Extreme and Outrageous Conduct:**

- Defendants Abacus Capital Group, LLC, Michael Sarno, AMFP V Central Park, LLC, Sako Partners Lower Holdings, LLC, Asset Living, LLC, Michael and Ryan McGrath, and Shanna Martinez engaged in conduct that went far beyond negligent mismanagement; they willfully created and maintained conditions that terrorized tenants, including Plaintiff Mr. Haubenreiser.
- Plaintiff repeatedly informed Defendants of violent neighbors, open criminal enterprises in the building, and specific threats to his life. Instead of resolving these issues, Defendants retaliated by placing problem tenants near him, denying him access to common areas, banning him from the leasing office, and attempting wrongful evictions—while continuing to ignore his formal complaints.
- These actions—taken collectively and repeatedly over a prolonged period—amount to intentional and malicious acts designed to intimidate, coerce, and punish Plaintiff for exercising his legal rights.

**Intent or Recklessness:**

- Each Defendant had actual or constructive knowledge of the harm being inflicted:
  - **Abacus Capital Group** and **Michael Sarno**, through **AMFP V Central Park, LLC**, controlled the budget and received constant reports about habitability conditions and complaints.
  - **Sako Partners** and the **McGraths** set policy directives and hired managers like **Shanna Martinez**, who acted under their supervision.
  - **Martinez**, with knowledge of Plaintiff's disability and the threats he faced, not only failed to intervene but directly worsened the conditions through discriminatory and retaliatory actions, including tampering with rent ledgers and blocking access to services.
- Their collective indifference and retaliatory behavior were not merely administrative errors but reckless disregard for the physical and emotional safety of Plaintiff.

**Severe Emotional Distress:**

- As a direct and proximate result of Defendants' conduct, Plaintiff has suffered extensive emotional trauma, including worsening PTSD, anxiety, fear for his life, inability to sleep, avoidance behaviors, loss of appetite, paranoia, hypervigilance, and long-term mental health deterioration—all well documented by treating physicians.
- Plaintiff had to set up escape mechanisms in his unit and physically respond to fires and criminal threats due to Defendants' failure to provide basic protections.

**Conclusion:** Defendants' willful and extreme conduct—inflicting fear, insecurity, and retaliation—meets the threshold for intentional infliction of emotional distress under Colorado law. Their conduct was not only intentional or reckless, but deeply malicious and inhumane. The nexus between each Defendant's role and their contribution to this emotional torment is clear and supported by evidence.

Plaintiff respectfully requests that the Court award: Compensatory damages for emotional harm and related treatment; Punitive damages for egregious conduct; Injunctive relief to prevent further emotional harm; Attorneys' fees and costs; and Any other relief deemed just and proper.

---

## CLAIM VIII: VIOLATIONS OF THE COLORADO CARES ACT (HOUSE BILLS 23-1095 AND 23-1254)

**Elements:** To establish a claim under the Colorado Cares Act (House Bills 23-1095 and 23-1254), Plaintiff must show:

1. Plaintiff qualifies as a tenant protected under the Act;
2. Defendants engaged in prohibited retaliatory conduct or failed to remedy dangerous conditions, violating tenant protections;
3. These actions caused Plaintiff harm.

**Application to Plaintiff and Nexus to Each Defendant:**

**Statutory Protection and Tenant Status:** Plaintiff Jason Haubenreiser qualifies for protection under the Colorado Cares Act as a residential tenant. The statute, recently expanded through House Bills 23-1095 and 23-1254, provides additional protections for tenants asserting their rights related to habitability, retaliation, and access to basic housing services.

**Violations and Retaliatory Conduct:** Each named Defendant directly participated in conduct that violated these enhanced protections:

- **Abacus Capital Group, LLC** and **Michael Sarno**, as the ultimate owners and financial controllers of the Property through **AMFP V Central Park, LLC**, knowingly permitted retaliatory and illegal conduct against tenants—including the Plaintiff—by continuing to fund operations without requiring remediation of known violations.
- **AMFP V Central Park, LLC**, while technically the listed owner, operated under the direct management of Abacus and Sarno, acting as their shell. The company approved expenditures and policies that actively contributed to the ongoing retaliatory conduct.
- **Sako Partners Lower Holdings, LLC** and the **McGraths** issued directives and managed property operations through Asset Living, LLC, while enabling and reinforcing a system of retaliation, including lease manipulation, banning Plaintiff from the office, and ignoring safety threats reported in writing.

- **Asset Living, LLC**, under orders from the above entities, failed to correct violations and instead engaged in documented retaliation, including by doubling Plaintiff's rent overnight, falsifying maintenance records, and initiating wrongful eviction efforts.
- **Shanna Martinez**, as on-site manager, was the direct agent of the retaliatory conduct. She personally served the wrongful eviction notices, illegally altered Plaintiffs payment ledgers, illegally terminated active leases for the Plaintiff, excluded and banned Plaintiff from common areas and amenities, and refused to address repeated written complaints regarding habitability and safety issues, many of which were verified by city inspectors.

**Causation and Harm:** As a result of the coordinated efforts among these Defendants, Plaintiff was subjected to two wrongful eviction notices, exclusion from property services, and threats that directly retaliated against him for asserting his rights and submitting formal legal complaints. These actions materially violate the tenant protections set forth in House Bills 23-1095 and 23-1254. Plaintiff suffered physical, financial, and emotional harm as a result.

**Conclusion:** Defendants' retaliatory conduct and failure to comply with mandatory tenant protections under the Colorado Cares Act constitute a clear violation of Colorado law. Each Defendant either directed, facilitated, or approved the actions that harmed Plaintiff.

Plaintiff respectfully requests compensatory and punitive damages, statutory damages permitted under the Act, injunctive relief to enforce future compliance, attorneys' fees and costs, and all other relief deemed just and proper by this Court.

---

## CLAIM IX: CRIMINAL NEGLIGENCE THROUGH THE PREMISES LIABILITY ACT (C.R.S. § 13-21-115)

**Elements:** To establish criminal negligence under C.R.S. § 13-21-115, Plaintiff must prove:

1. Defendants owed a duty of care to Plaintiff as a tenant and to his lawful visitors;
2. Defendants breached that duty through criminal negligence—defined as a failure to perceive a substantial and unjustifiable risk amounting to a gross deviation from the standard of care;
3. The breach directly and proximately caused Plaintiff's injuries or damages.

**Application to Plaintiff and Nexus to Each Defendant:**

**Duty of Care:** All Defendants—Abacus Capital Group, LLC, Michael Sarno, AMFP V Central Park, LLC, Sako Partners Lower Holdings, LLC, Asset Living, LLC, Michael and Ryan McGrath, and Shanna Martinez—owed a statutory and contractual duty to Plaintiff to maintain the property in a condition reasonably safe for tenants and their guests. See *Springer v. City & County of Denver*, 13 P.3d 794, 799 (Colo. 2000).

**Breach of Duty through Criminal Negligence:** Each Defendant breached this duty through criminal negligence. Plaintiff and others provided repeated and specific written notices—including formal complaints, maintenance requests, emails, photographs, and video evidence—regarding:

- Broken locks and non-functional elevators;
- Inadequate lighting, unsecured entryways, and inoperative security systems;
- Ongoing mold, pest, and sewage hazards;
- Rampant, organized criminal activity, including break-ins, car thefts, and assaults.

Despite actual and constructive notice, Defendants failed to remedy these life-threatening conditions, exposing Plaintiff to substantial and unjustifiable risks.

- **Abacus Capital Group** and **Michael Sarno**, as owners and controlling financial decision-makers for **AMFP V Central Park, LLC**, had full knowledge through internal reports and Plaintiff's direct notices. Yet they approved budgets and directed policies that continued to deprioritize tenant safety.
- **Sako Partners**, the entity responsible for managing Asset Living, implemented or approved cost-saving measures that ignored repeated criminal activity.
- **Asset Living, LLC** and the **McGraths** oversaw day-to-day operations, delegated to managers like **Shanna Martinez**, who personally received and disregarded Plaintiff's complaints, even housing known violent or disruptive tenants near Plaintiff despite repeated protests and evidence.

This systemic failure across all Defendants demonstrates a gross deviation from accepted norms of landlord care and property management, satisfying the criminal negligence standard. See *People v. Hall*, 999 P.2d 207 (Colo. 2000).

**Causation and Damages:** The result of this inaction was predictable and catastrophic. Plaintiff **Jason Haubenreiser** was brutally assaulted after submitting evidence to Defendants regarding credible, specific threats from neighbors. Similar failures led to:

- Physical assaults against **Daniel K. Miller**, **Katie Johnson**, and **Jessica Busby**;
- Emotional trauma, exacerbated PTSD, and anxiety from persistent threats;
- Financial harm, including costs for treatment, relocation, and legal proceedings.

Each of these harms was proximately caused by Defendants' criminally negligent acts or omissions. See *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 570 (Colo. 2008).

**Conclusion:** Defendants' conduct went beyond civil neglect and amounted to criminal negligence under C.R.S. § 13-21-115. Each Defendant's role in enabling hazardous conditions—through direct action, delegation, or policy—created foreseeable and unjustifiable risks that directly harmed Plaintiff.

Plaintiff respectfully requests compensatory damages for physical, emotional, and financial harm; punitive damages for the gross deviation from legal and moral duty; injunctive relief; and attorneys' fees. Further relief is warranted to deter similar misconduct in the future.

---

## CLAIM X: BREACH OF LEASE AGREEMENTS

**Elements:** Under Colorado law, to establish a breach of lease, Plaintiff must demonstrate:

1. A valid lease agreement existed;
2. Defendants materially breached the terms of the lease;
3. Plaintiff suffered damages as a result of that breach.

**Application to Plaintiff and Nexus to Each Defendant:**

**Existence of a Valid Lease:**

Plaintiff Jason Haubenreiser entered into valid and enforceable residential lease agreements covering his tenancy at the Avantus Apartments. These leases contained express and implied terms requiring the landlord and property managers to:

- Maintain the premises in a safe, habitable, and lawful condition;
- Comply with all applicable federal, state, and municipal laws including but not limited to ADA, FHA, and Warranty of Habitability statutes;

- Refrain from retaliating against tenants who exercise their legal rights.

**Material Breach by Defendants:**

Each Defendant played a critical role in breaching those contractual obligations:

- **Abacus Capital Group, LLC** and **Michael Sarno**, as the ultimate parent owners through **AMFP V Central Park, LLC**, held fiduciary and operational control over expenditures and compliance at the property. They knowingly permitted contract breaches through budget decisions, refusal to approve necessary maintenance, and turning a blind eye to illegal conduct on-site.
- **Sako Partners Lower Holdings, LLC**, **Asset Living, LLC**, and **Michael and Ryan McGrath** were delegated operational control and directly oversaw lease enforcement, repair response, and habitability maintenance. Their failure to act on Plaintiff's repair requests, documentation, and legal notices was a material breach of their duties.
- **Shanna Martinez**, as onsite management acting on behalf of the above entities, committed daily violations of the lease terms by falsifying maintenance records, canceling legitimate work orders, tampering with lease renewal documentation, and engaging in targeted retaliation.

**Examples of Breach:**

- Failure to repair life-threatening hazards (non-functioning elevators, broken doors, fire safety violations);
- Retaliatory rent increases and eviction notices despite valid leases;
- Misrepresentation of payment status and illegal edits to Plaintiff's ledger;
- Denial of access to essential property amenities in violation of lease terms.

**Causation and Damages:**

As a direct result of these breaches, Plaintiff suffered: Physical injury (e.g., during assault enabled by failed security measures); Mental and emotional trauma (e.g., PTSD, anxiety); Financial losses including: Medical expenses; Lost wages; Costs of documentation, time and opportunity costs, and legal expenses; Increased rent and penalties applied in bad faith.

**Conclusion:** Defendants' coordinated failure to comply with their lease obligations—by allowing grossly unsafe and retaliatory conditions to persist—constitutes a clear and material breach.

Plaintiff respectfully requests: Compensatory damages for economic and non-economic losses; Punitive damages to deter future violations; Injunctive relief requiring lease compliance and repairs; Attorneys' fees and costs; Any further relief the Court deems just and proper to restore the contractual protections owed to Plaintiff.

---

<u>CLAIM XI: VIOLATIONS OF THE COLORADO ANTI-DISCRIMINATION ACT (C.R.S. §§ 24-34-601 et seq.)</u>

**Elements:** Under C.R.S. §§ 24-34-601 et seq., Plaintiff must demonstrate:

1. Plaintiff is a member of a protected class under the Colorado Anti-Discrimination Act (CADA).
2. Defendants engaged in discriminatory practices that denied Plaintiff equal enjoyment of housing facilities.
3. The discriminatory actions were intentional or had a disparate impact on Plaintiff due to their protected status.

**Application to Plaintiff and Nexus to Each Defendant:**

**Protected Status:** Plaintiff Jason Haubenreiser qualifies as a member of a protected class under the Colorado Anti-Discrimination Act (CADA) due to his documented disabilities, including PTSD, severe anxiety, depression, and mobility impairments. These conditions were made known to all Defendants through medical documentation, written accommodation requests, and formal service animal notices.

**Discriminatory Conduct:** Defendants collectively engaged in a course of conduct that deprived Plaintiff of equal access and enjoyment of the housing premises through both action and inaction:

- **Abacus Capital Group, LLC** and **Michael Sarno** directed funding and approval decisions while having direct knowledge of Plaintiff's disabilities and the accessibility deficiencies at the property, including the inoperable elevators, non-functioning security doors, and structural conditions that posed hazards specifically for disabled tenants.
- **AMFP V Central Park, LLC**, the funding and title-holding entity controlled by Sarno and Abacus, ratified these decisions, allowing persistent ADA and CADA violations.
- **Sako and Partners Lower Holdings, LLC**, along with **Asset Living, LLC**, and the **McGraths**, developed and enforced property-level operational decisions that denied requested accommodations and ignored repeated written complaints.
- **Shanna Martinez**, acting on directives from Owners and management companies, directly refused accommodations, implemented retaliatory acts such as illegal rent increases and fabricated lease violations, and treated Plaintiff's complaints with indifference or hostility.

**Disparate Impact and Intent:** Plaintiff and other similarly disabled tenants—including Daniel Miller, Katie Johnson, and Jessica Busby—faced disparate treatment and access barriers that non-disabled tenants did not experience. Their mobility impairments were exacerbated by elevator outages and blocked common areas, and their PTSD symptoms were heightened by unsafe conditions and targeted retaliatory practices. Despite repeated notifications of these disparate impacts and specific requests for modification or repair, Defendants failed to act. This deliberate inaction constitutes intentional discrimination under CADA.

**Conclusion:** Defendants' sustained pattern of discriminatory treatment against Plaintiff, a qualified individual with disabilities, directly violated the Colorado Anti-Discrimination Act. Defendants' refusal to provide equal access to housing facilities, respond to formal accommodation requests, or remedy clearly documented accessibility barriers and unsafe conditions demonstrates both disparate impact and intentional misconduct.

Plaintiff respectfully requests that the Court: Award compensatory and punitive damages; Issue injunctive relief requiring Defendants to bring the property into full compliance with CADA standards; Grant attorneys' fees and costs; Provide any other relief deemed just and proper to ensure the equal protection of disabled tenants and to deter further discriminatory practices.

---

<u>CLAIM XII: VIOLATIONS OF THE FALSE CLAIMS ACT (31 U.S.C. §§ 3729–3733)</u>

**Elements:** Under the False Claims Act (FCA), to prevail in a qui tam action, the Plaintiff must establish:

1. That Defendants knowingly submitted false or fraudulent claims for payment to the federal government;

2. That such claims caused the government to disburse funds (e.g., housing subsidies under Section 8);
3. That the Plaintiff, as a whistleblower, suffered harm or retaliation due to these disclosures.

See *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176 (2016) (affirming the materiality standard and affirming FCA liability where representations mislead the government about compliance).

**Application to Plaintiff and Nexus to Each Defendant:**
**False Certification and Federal Subsidies:**

- Defendants **Abacus Capital Group, LLC**, **Michael Sarno**, and **AMFP V Central Park, LLC** were direct recipients of federal funds through HUD-subsidized housing programs, including Section 8, during their ownership and control of the Avantus Apartments.
- These Defendants certified compliance with HUD and federal habitability standards as a condition for receiving these subsidies, despite being in long-term, continuous violation of those same standards. This included conditions such as lack of heat and hot water, rampant criminal activity, failure to maintain fire safety systems, and inaccessible infrastructure, all of which are barred under HUD guidelines.

**Operational Control and Knowledge:**

- **Sako Partners**, **Asset Living, LLC**, **Michael McGrath**, **Ryan McGrath**, and **Shanna Martinez** operated and oversaw property conditions on behalf of the ownership group. They prepared or facilitated reports submitted to HUD and internal certifications required for continued subsidy eligibility.
- These Defendants had firsthand knowledge of the property's noncompliance via direct complaints from Plaintiff, city citations, email correspondence, and internal records. Nonetheless, they participated in affirming false compliance.

**Plaintiff's Whistleblower Status and Retaliation:**

- Plaintiff Jason Haubenreiser documented widespread and persistent violations of federal housing standards and began formally notifying city agencies and federal housing officials.
- In response, Defendants retaliated by issuing fraudulent ledgers, doubling Plaintiff's rent in violation of a valid lease, falsely claiming Plaintiff's lease was "lost," and attempting to evict Plaintiff—acts clearly tied to Plaintiff's whistleblowing and protected activities under the FCA.

**Conclusion:** Defendants knowingly submitted or caused to be submitted false claims to the United States Government regarding the condition and legal compliance of the Avantus Apartments, violating the False Claims Act. These acts led to the improper receipt of federal funds and exposed tenants—including the Plaintiff—to uninhabitable, unsafe conditions in direct contravention of the program's purpose.

Plaintiff respectfully seeks: Treble damages as authorized under the FCA; Statutory penalties per false claim; Compensation for retaliatory harm and whistleblower protections under 31 U.S.C. § 3730(h); Injunctive relief and audit/review of subsidy eligibility; Attorneys' fees and all other relief deemed just and proper by this Court to address Defendants' egregious misuse of taxpayer funds and unlawful retaliation.

CLAIM XIII: VIOLATIONS OF THE DENVER MUNICIPAL CODE ON HEALTH AND SAFETY (DENVER MUNI. CODE § 24-16)

**Elements:** To prevail under Denver Municipal Code § 24-16, Plaintiff must demonstrate:

1. That the premises were not maintained in a clean and sanitary condition;
2. That Defendants failed to address conditions that posed a health hazard;
3. That such violations impacted Plaintiff's health, safety, or well-being.

**Application to Plaintiff and Nexus to Each Defendant:**

**Violations:** All named Defendants—Abacus Capital Group, LLC, Michael Sarno, AMFP V Central Park, LLC, Sako Partners Lower Holdings, LLC, Asset Living, LLC, Michael and Ryan McGrath, and Shanna Martinez—participated in maintaining and operating the Avantus Apartments in a manner that directly violated Denver Municipal Code § 24-16.

- For the entire period from 2020 to the present, the Property was persistently overrun with mold, pest infestations, raw sewage, and fire and safety hazards. Trash was often piled waist-high in hallways and stairwells, causing biohazards and fire risk. Heat and hot water outages lasted for weeks or months, including during extreme weather, with Defendants failing to take corrective action despite formal city notices and tenant reports.

**Nexus to Each Defendant:**

- **Abacus Capital Group, LLC**, through its fund **AMFP V Central Park, LLC**, provided capital, exercised operational oversight, and received direct reports detailing these conditions. Despite knowledge, Abacus failed to allocate resources to resolve the violations.
- **Michael Sarno**, as a controlling officer of Abacus and AMFP V, had authority to authorize repairs and enforce health compliance but knowingly permitted the conditions to persist.
- **Sako Partners Lower Holdings, LLC**, **Asset Living, LLC**, and the **McGraths** operated the property day-to-day, directing on-site policies. Internal communications, manager testimony, and lease records show they were aware of the violations and failed to act in accordance with municipal standards.
- **Shanna Martinez**, as on-site property manager, received direct complaints, city violation notices, and tenant communications, yet failed to resolve any of the cited health and safety issues. She is directly responsible for management decisions and tenant interactions that prolonged hazardous conditions.

**Ongoing Violations:**

- Multiple Denver Department of Public Health and Environment (DDPHE) citations were issued between 2022 and 2025. CORA-obtained reports, inspection notes, and photographic evidence confirm that these violations remained unaddressed well into 2025.

**Conclusion:** Defendants' collective failure to remedy persistent violations of Denver Municipal Code § 24-16, including unaddressed mold, sewage, pest infestations, and absence of heat and hot water, placed Plaintiff in extreme danger and caused serious harm to his health, safety, and emotional well-being. These violations were well-documented, long-standing, and willfully ignored.

Plaintiff respectfully seeks compensatory damages for health-related and emotional harm; punitive damages to deter such future conduct; injunctive relief to ensure prompt compliance with Denver's health and safety codes; statutory damages; and attorneys' fees and costs. Further, Plaintiff seeks

any additional relief deemed just and appropriate by the Court to address the egregious nature of these violations.

CLAIM XIV: BREACHES OF DENVER FIRE CODES

**Elements:** Plaintiff must demonstrate that Defendants violated provisions of the Denver Fire Code (DFC), which incorporates the International Fire Code (IFC) and mandates the maintenance of fire safety systems and prevention of fire hazards.

**Application to Plaintiff and Nexus to Each Defendant:**

1. **Failure to Maintain Fire Safety Systems:** Defendants failed to ensure the operability of fire alarms, sprinklers, and other life-saving systems mandated by the DFC. Plaintiff observed and reported non-functional smoke detectors, fire control panels, and fire extinguishers, which were not replaced or repaired despite multiple requests. See DFC § 907.20.5.
2. **Blocked Exits and Egress Violations:** Defendants allowed emergency exits and pathways to remain obstructed by debris, violating DFC § 1031.3. Plaintiffs Jason Haubenreiser, Daniel K. Miller, Elizabeth Wilhour, Sean Wilhour, Katie Johnson, and Jessica Busby documented repeated instances of blocked exits, including video and photo evidence, which endangered tenants during fire drills and actual emergencies.
3. **Combustible Hazards:** Defendants ignored complaints regarding the storage of flammable materials in common areas, violating DFC § 305.1. These combustible hazards, including gasoline containers and piles of refuse, presented a continuous risk of fire.
4. **Lack of Fire Drills and Evacuation Plans:** Defendants failed to conduct mandatory fire drills or post evacuation plans as required by DFC § 404.3, resulting in confusion and panic during frequent alarms.
5. **Causation and Damages:** These persistent violations created an environment that was unreasonably dangerous, placing Plaintiffs at elevated risk. For example, Plaintiffs experienced severe anxiety due to false alarms and non-functional safety features, exacerbating PTSD symptoms in disabled tenants.

**Nexus to Each Defendant:**

- **Abacus Capital Group, LLC** and **Michael Sarno** oversaw property budgets and received ongoing reports about non-functional fire safety systems. They failed to authorize necessary repairs and continued to lease units despite known fire code violations.
- **AMFP V Central Park, LLC** owned the property and was the financial beneficiary of lease revenue while ignoring critical safety violations on-site.
- **Sako Partners Lower Holdings, LLC**, **Asset Living, LLC**, **Michael McGrath**, and **Ryan McGrath** were responsible for operational oversight and policy enforcement. Despite repeated warnings from staff and tenants, they allowed violations to persist and failed to comply with basic life-safety protocols.
- **Shanna Martinez**, acting on behalf of Asset Living and under direction from owners and corporate management, ignored multiple complaints and closed work orders regarding fire hazards. She actively misrepresented the safety conditions in correspondence and tenant portals.

**Conclusion:** Defendants' repeated and ongoing breaches of the Denver Fire Code created hazardous living conditions that endangered Plaintiffs' lives. Their collective failure to comply with clearly established safety regulations demonstrates gross negligence.

Plaintiff respectfully requests compensatory and punitive damages, injunctive relief to enforce full compliance with applicable codes, attorneys' fees, and any further relief this Court deems just and equitable.

---

CLAIM XV: BREACHES OF IMPLIED COVENANT OF QUIET ENJOYMENT

**Elements:** Under Colorado common law, every lease includes an implied covenant that guarantees tenants the right to peaceful and quiet enjoyment of the premises. To succeed, Plaintiff must show:

1. That a lease agreement existed;
2. That Defendants substantially interfered with Plaintiff's use and enjoyment of the premises;
3. That Plaintiff suffered damages as a result.

**Application to Plaintiff and Nexus to Each Defendant:**
**Existence of Lease and Covenant:** Plaintiff Jason Haubenreiser entered into a valid lease agreement for his residence at the Avantus Apartments. By law, this agreement included the implied covenant of quiet enjoyment.

**Interference by Defendants:** Defendants—including Abacus Capital Group, LLC, Michael Sarno, AMFP V Central Park, LLC, Sako Partners Lower Holdings, LLC, Asset Living, LLC, Michael McGrath, Ryan McGrath, and Shanna Martinez—collectively and individually interfered with this covenant through systemic failures to maintain a habitable and secure environment.

- Defendants failed to address constant and excessive disturbances, including parties exceeding 120 decibels, documented gang activity, and multiple violent assaults.
- Defendants allowed pervasive criminal activity to fester, including open drug use, methamphetamine production, harassment, and voyeuristic conduct by neighbors. Plaintiff was subjected to repeated credible threats that Defendants knew about and did nothing to prevent.
- Plaintiff was forced to endure frequent and prolonged outages of essential utilities, such as heat and hot water, especially during extreme weather, despite repeated notices to Defendants.
- Locks and security doors remained broken for years, and elevators were consistently non-functional, creating unsafe and unlivable conditions.

**Defendants' Roles:**

- **Abacus Capital Group, LLC** and **Michael Sarno**, acting through **AMFP V Central Park, LLC**, exercised ultimate control over expenditures, repairs, and tenant placement decisions. Their oversight made them directly responsible for the prolonged violations of Plaintiff's rights.
- **Sako Partners** and **Asset Living, LLC** served as direct property managers and were responsible for day-to-day operations and tenant services. Their documented failure to respond to Plaintiff's maintenance requests and safety concerns contributed directly to the breach.
- **Michael and Ryan McGrath** acted as corporate leaders of Asset Living and were directly responsible for policies that led to neglect and harmful tenant placement decisions.
- **Shanna Martinez**, as on-site manager, was aware of Plaintiff's complaints and took retaliatory measures, further exacerbating the breaches.

**Damages:** Plaintiff suffered emotional distress, sleep disruption, anxiety, and fear for personal and family safety. These interferences forced Plaintiff to endure a quality of life far below what was guaranteed under the lease and common law.

**Conclusion:** Defendants' conduct amounted to repeated and sustained breaches of the implied covenant of quiet enjoyment. These actions and omissions significantly interfered with Plaintiff's ability to safely and peacefully enjoy their home, in violation of Colorado law.

Plaintiff respectfully requests: Compensatory damages for emotional distress and interference with quiet enjoyment; Punitive damages to deter future misconduct; Injunctive relief compelling compliance with lease terms and common law duties; Attorneys' fees and any additional relief deemed just and proper by this Court.

---

## CLAIM XVI: NEGLIGENCE PER SE FOR VIOLATIONS OF BUILDING AND HOUSING CODES

**Elements:** Under Colorado law, Plaintiff must establish:

1. A statute or ordinance was violated;
2. The statute was designed to protect against the type of harm suffered;
3. The violation caused Plaintiff's injuries. See *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 570 (Colo. 2008).

**Application to Plaintiff and Nexus to Each Defendant:**
**Violation of Statutes and Ordinances:** Defendants violated numerous applicable state and municipal building and housing codes, including:

- The Denver Building and Fire Code, by failing to maintain structural and fire safety systems;
- The Colorado Housing Code (e.g., C.R.S. § 38-12-503), by failing to maintain habitable living conditions;
- The International Property Maintenance Code (IPMC), incorporated by the City and County of Denver, by failing to repair elevators, structural integrity, and sanitation systems.

These violations are reflected in multiple city-issued Notices of Violation and Administrative Citations issued during Plaintiff's tenancy.
**Nexus to Defendants:**

- **Abacus Capital Group, LLC**, **Michael Sarno**, and **AMFP V Central Park, LLC** directed major financial and operational decisions for the property, approving expenditures, reviewing safety reports, and directing management personnel, yet knowingly failed to fund or require critical repairs.
- **Sako Partners Lower Holdings, LLC**, **Asset Living, LLC**, **Michael McGrath**, **Ryan McGrath**, and **Shanna Martinez** were responsible for day-to-day oversight, supervising maintenance teams, and fielding resident complaints about broken elevators, structural disrepair, and unaddressed code violations, which they repeatedly ignored despite actual knowledge of their ongoing nature.

**Causation and Harm:** As a direct result of these statutory violations:

- Plaintiff Jason Haubenreiser, who suffers from mobility-related disabilities and PTSD, was forced to navigate unsafe stairwells due to non-functional elevators, placing him at risk of physical harm and emotional trauma.
- Structural failures such as leaking ceilings, broken fire systems, and unsecured entryways created a constant state of fear, instability, and danger.

**Conclusion:** Defendants' failure to adhere to building and housing codes constituted negligence per se, directly causing physical injury, emotional distress, and economic loss to Plaintiff. Their collective inaction demonstrates a systematic disregard for safety and legal compliance.

Plaintiff respectfully requests compensatory and punitive damages, injunctive relief mandating code compliance, attorneys' fees, and all other relief the Court deems just and appropriate to remedy Defendants' violations and deter future misconduct.

---

## CLAIM XVII: VIOLATION OF COLORADO'S IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

**Elements:** Under Colorado law, a landlord implicitly warrants that rental premises will be suitable for the intended use—residential habitation. To establish this claim, Plaintiff must demonstrate:

1. That the property was leased for residential use;
2. That the condition of the property was unsuitable for such use due to hazardous or uninhabitable conditions;
3. That the Plaintiff suffered damages as a result.

**Application to Plaintiff and Nexus to Each Defendant:**

**Unfit Conditions:** The premises leased to Plaintiff Jason Haubenreiser were in a persistently hazardous and uninhabitable condition throughout the tenancy. Despite paying full rent, Plaintiff endured:

- Raw sewage backups in bathtubs and toilets;
- Persistent mold and pest infestations;
- Inadequate lighting and broken locks leading to rampant criminal activity;
- Non-functional elevators and lack of ADA-compliant access;
- Heating and water failures during winter months.

These conditions were not isolated incidents, but a pattern of systemic failures that rendered the premises wholly unsuitable for the intended residential purpose. Plaintiff repeatedly documented and reported these conditions in writing, photographs, videos, and formal notices.

**Causal Nexus to Each Defendant:**

- **Abacus Capital Group, LLC** and **Michael Sarno** exercised ownership authority over the property through AMFP V Central Park, LLC, and received reports of property conditions. Their failure to approve necessary expenditures contributed to the prolonged uninhabitability.
- **AMFP V Central Park, LLC** was the listed owner of record and held legal responsibility to ensure compliance with all warranty obligations.
- **Sako Partners Lower Holdings, LLC** and **Asset Living, LLC** were contracted for property management and daily operations. They received direct tenant complaints and failed to execute repairs or comply with habitability standards.
- **Michael and Ryan McGrath**, as executives of Asset Living, oversaw company-wide policies that deprioritized repairs, reduced on-site staffing, and dismissed tenant reports as routine issues.
- **Shanna Martinez**, on-site manager, personally received Plaintiff's habitability complaints and either ignored them or relayed to superiors without resolution.

Each Defendant had actual or constructive knowledge of the unfit living conditions and failed to act to resolve them. This constitutes a breach of the implied warranty of fitness for a particular purpose.

**Conclusion:** Defendants' collective failure to maintain the Property in a habitable condition violates Colorado's Implied Warranty of Fitness for a Particular Purpose. Plaintiff was forced to reside in conditions unfit for human habitation, resulting in economic loss, serious emotional and physical harm, and undue distress.

Plaintiff respectfully requests: Compensatory damages for economic and non-economic harm; Punitive damages to deter further misconduct; Injunctive relief requiring Defendants' compliance with residential fitness standards; Attorneys' fees and any other relief the Court deems just and equitable.

---

## CLAIM XVIII: VIOLATIONS OF THE COLORADO COMMON INTEREST OWNERSHIP ACT (C.R.S. §§ 38-33.3-101 ET SEQ.)

**Elements:** To prevail under the Colorado Common Interest Ownership Act (CCIOA), Plaintiff must demonstrate:

1. The property is governed under a common interest community or HOA subject to the Act;
2. Defendants owed fiduciary or statutory duties under the CCIOA;
3. Defendants breached those duties through mismanagement, neglect, or noncompliance with statutory obligations;
4. Plaintiff suffered damages as a result of the breach.

**Application to Plaintiff and Nexus to Each Defendant:**
**Covered Property and Duties:** The Avantus Apartments operate as a multifamily housing property subject to municipal oversight, and upon information and belief, portions of the complex fall within the definition of a common interest community under Colorado law. Regardless of HOA formal designation, CCIOA provisions governing good faith, fiduciary responsibility, and duty of care apply to managers and owners alike.

- **Abacus Capital Group, LLC**, **Michael Sarno**, and **AMFP V Central Park, LLC**, as owners and investment managers, exercised financial control and authorized expenditures that impacted maintenance and safety operations. They directly oversaw compliance and held final approval over remediation budgets, yet consistently failed to act in response to notice.
- **Sako Partners Lower Holdings, LLC**, **Asset Living, LLC**, and **Michael and Ryan McGrath** managed the day-to-day operations, including physical maintenance, habitability enforcement, and communication with tenants. These Defendants neglected routine repairs, ignored emergency maintenance requests, and failed to act on credible reports of code and statutory violations.
- **Shanna Martinez**, as the on-site manager during much of the relevant period, had actual notice of numerous issues and complaints from Plaintiff and failed to escalate or remediate these conditions in accordance with fiduciary obligations under CCIOA and municipal expectations.

**Breach and Harm:** Defendants failed to:

- Maintain basic infrastructure, including elevators, secure entries, and trash disposal systems;
- Comply with accessibility obligations for disabled tenants;
- Remedy hazardous conditions such as broken locks, sewage backups, and fire code violations;
- Implement or enforce procedures for inspections, emergency maintenance, or tenant safety.

These breaches directly impacted Plaintiff Jason Haubenreiser, who suffered financial loss, injury, emotional distress, and worsening of his PTSD and mobility-related disabilities.

**Conclusion:** Defendants' failure to discharge their duties under the Colorado Common Interest Ownership Act—including their fiduciary and managerial obligations—contributed to uninhabitable conditions, legal violations, and personal harm to Plaintiff. Each named Defendant either directly managed, controlled, or was responsible for the safety, operation, or oversight of the property.

Plaintiff respectfully seeks compensatory, statutory, and punitive damages, injunctive relief to ensure compliance with CCIOA obligations, attorneys' fees, and any other relief the Court deems just and equitable.

---

<u>CLAIM XIX: VIOLATIONS OF THE COLORADO RENTAL FAIRNESS ACT (C.R.S. § 38-12-801 et seq.)</u>

**Elements:** To prevail under the Colorado Rental Fairness Act ("CRFA"), a plaintiff must demonstrate:

1. Defendants included or enforced lease terms waiving tenant rights or remedies provided by law (C.R.S. § 38-12-801);
2. Defendants imposed excessive or unreasonable fees or penalties (C.R.S. § 38-12-802);
3. Defendants retaliated against tenants for asserting legal rights (C.R.S. § 38-12-509);
4. Defendants failed to provide transparent lease terms and adequate notice of changes (C.R.S. § 38-12-803).

**Application to Plaintiff and Nexus to Each Defendant:**
**Violation of Rights and Lease Terms:** All Defendants—Abacus Capital Group, LLC, Michael Sarno, AMFP V Central Park, LLC, Sako Partners Lower Holdings, LLC, Asset Living, LLC, Michael and Ryan McGrath, and Shanna Martinez—either directly created or were complicit in the enforcement of lease terms and practices that violated CRFA protections.

- **Abacus Capital Group** and **Michael Sarno**, through their fund **AMFP V Central Park, LLC**, retained final authority on financial decisions and lease enforcement, as established by internal emails and reports. They knew or should have known that retaliatory actions were taken against tenants asserting their rights.
- **Sako Partners** and **Asset Living**, under the direction of the **McGraths**, issued policies enabling retaliatory rent increases, denial of lease renewals, altered ledgers, and blocked access to essential services.
- **Shanna Martinez**, acting on behalf of Asset and Abacus, directly carried out many of these retaliatory actions, such as "losing" Plaintiff's lease, doubling rent without legal basis, and issuing false eviction notices.

**Specific Misconduct:**

1. Plaintiff's lease contained vague or misleading terms about habitability rights, and Defendants created the false impression that habitability complaints would void lease renewal rights or result in eviction.
2. Plaintiff faced unjustified rent increases, excessive late fees, and arbitrary penalties after notifying Defendants of legal violations.
3. Defendants obstructed lease access and manufactured grounds for forced relocation, including manipulated payment ledgers and fabricated lease expiration dates.

4. Plaintiff was not properly notified of lease changes or penalty structures and suffered emotional distress and financial hardship as a result.

**Conclusion:** Defendants' collective conduct—ranging from unclear lease language to retaliatory rent hikes and lack of notice—constituted systemic violations of the Colorado Rental Fairness Act. Each Defendant was either a direct participant or knowingly permitted these unlawful practices. As a result, Plaintiff suffered financial damages, mental distress, and a deprivation of their statutory protections.

Plaintiff respectfully requests compensatory damages, statutory damages as provided under the CRFA, punitive damages, injunctive relief to ensure lease transparency and fair treatment of tenants, attorneys' fees, and any other relief the Court deems just and appropriate.

---

<u>CLAIM XX: BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING</u>

**Elements:** Under Colorado law, every lease agreement contains an implied covenant of good faith and fair dealing, requiring that neither party engage in conduct that will deprive the other of the benefits of the contract. Defendants, as landlords and managing entities, were obligated to act fairly and in good faith to ensure Plaintiff's peaceful use and enjoyment of the leased premises.

**Application to Plaintiff and Nexus to Each Defendant:**
**Breach of Good Faith Duties:**
Defendants—including Abacus Capital Group, LLC, Michael Sarno, AMFP V Central Park, LLC, Sako Partners Lower Holdings, LLC, Asset Living, LLC, Michael and Ryan McGrath, and Shanna Martinez—breached their contractual duty of good faith and fair dealing through a persistent and coordinated course of misconduct that obstructed Plaintiff's use and enjoyment of the leasehold premises:

1. **Habitability Violations:**
   - Defendants willfully failed to address raw sewage backups, pest infestations, mold outbreaks, broken locks, non-functional elevators, and inadequate heating and plumbing.
   - These issues were not only persistently unaddressed despite repeated notices, but Defendants misrepresented to city officials and tenants that the conditions were corrected.

2. **Retaliatory Conduct:**
   - Plaintiff Jason Haubenreiser was repeatedly retaliated against for reporting these violations. Defendants issued unjustified cease-and-desist letters, served baseless eviction notices, altered his payment ledgers, "lost" his lease, and imposed excessive rent increases.
   - Defendants also placed criminal tenants next to Plaintiff, despite Plaintiff's documented complaints of violent behavior, with the intent to force Plaintiff to self-evict.

3. **Neglect of Security:**
   - Despite repeated warnings and city citations, Defendants failed to repair broken security doors, replace locks, or address widespread criminal activity in common areas. These omissions created objectively unsafe living conditions.

4. **Failure to Address Maintenance Requests:**

- Plaintiff submitted dozens of formal maintenance requests—many supported by photographs and time-stamped videos—regarding broken elevators, active leaks, and broken fire alarms. These requests were systematically ignored or marked "completed" without action.

5. **Unreasonable Restrictions and Harassment:**
   - Plaintiff was wrongfully banned from accessing the leasing office and communicating with staff after raising complaints. Defendants also disabled Plaintiff's online resident portal, further obstructing access to repairs and rent ledgers.

**Nexus:**

- **Abacus Capital Group, LLC** and **Michael Sarno** approved budgets, staffing, and expenditures while being in possession of detailed reports and tenant complaints—including direct emails from Plaintiff. Their decisions enabled and perpetuated the conditions described.
- **Asset Living, LLC**, **Sako Partners**, and the **McGraths** directed onsite operations, implemented policies, and had the authority to make repairs or relocate dangerous tenants.
- **Shanna Martinez**, as the onsite property manager, personally oversaw and carried out many of the retaliatory and obstructive actions against Plaintiff. Her conduct included denying repairs, cancelling work orders, falsifying lease records, and failing to intervene against known criminal neighbors.

**Conclusion:**
Defendants' actions reflect a systemic and intentional breach of the covenant of good faith and fair dealing. Rather than acting in the best interest of tenants, Defendants sought to minimize costs and retaliate against Plaintiff for asserting legal rights. These breaches caused significant economic and non-economic harm to Plaintiff, including health deterioration, PTSD aggravation, financial distress, and ongoing fear for personal safety.

Plaintiff respectfully requests compensatory and punitive damages, injunctive relief compelling Defendants to comply with their contractual and legal obligations, attorneys' fees, and all other relief deemed just and proper by the Court.

---

## CLAIM XXI: UNJUST ENRICHMENT

**Elements:** Under Colorado law, a claim for unjust enrichment requires Plaintiff to demonstrate:

1. Defendants received a benefit.
2. Defendants retained the benefit at Plaintiff's expense.
3. Retention of the benefit would be unjust under the circumstances.

**Application to Plaintiff and Nexus to Each Defendant:**
**Benefit Received:** Defendants, including Abacus Capital Group, LLC, Michael Sarno, AMFP V Central Park, LLC, Sako Partners Lower Holdings, LLC, Asset Living, LLC, Michael McGrath, Ryan McGrath, and Shanna Martinez, knowingly received substantial financial benefits through:

- Rent payments from Plaintiff and other tenants despite failure to meet legal habitability standards.
- Federal housing subsidies, including Section 8 funds, based on fraudulent or materially misleading representations of compliance with state, federal, and municipal law.

**At Plaintiff's Expense:** Plaintiff Jason Haubenreiser:

- Paid rent under the understanding and expectation of habitable, safe conditions, which Defendants failed to provide.
- Was subjected to illegal rent increases, fabricated late fees, and manipulated ledger entries.
- Paid out-of-pocket for services, utilities, or necessities (e.g., laundry, pest control) that Defendants failed to maintain.
- Incurred economic losses from seeking legal redress, suffering emotional harm from unsafe conditions, and requiring medical care following multiple assaults and unsafe living situations.

**Unjust Retention:** The benefits Defendants retained—rent and subsidy payments—were secured through fraud, negligence, and retaliation, while Plaintiff was forced to endure substandard, unsafe, and illegal conditions. This unjust enrichment is especially egregious considering:

- **Abacus Capital Group, LLC** and **Michael Sarno** directly oversaw expenditures and had access to management-level complaints and tenant correspondence.
- **AMFP V Central Park, LLC**, as the titled property owner, was legally and financially accountable for conditions and operations on the premises.
- **Asset Living, LLC** and **Sako Partners** executed daily operations while ignoring repeated complaints and maintenance issues.
- **Michael and Ryan McGrath** facilitated operations and accountability across affiliated entities.
- **Shanna Martinez**, acting as the onsite agent, not only ignored tenant complaints but personally participated in illegal retaliatory acts, including falsifying lease information and restricting Plaintiff's ability to report conditions or seek redress.

**Conclusion:**
Defendants' retention of rental income and public subsidies while failing to meet their statutory, contractual, and ethical obligations constitutes unjust enrichment. This conduct caused direct and ongoing harm to Plaintiff and unjustly enriched Defendants at Plaintiff's expense.

Plaintiff respectfully requests restitution for all rent and benefit payments made during periods of uninhabitability, compensatory damages for related expenses, punitive damages to deter future misconduct, attorney's fees and costs, and any additional relief this Court deems just and equitable.

---

<u>CLAIM XXII: VIOLATION OF C.R.S. § 38-12-103 (SECURITY DEPOSITS)</u>

**Elements:** Under C.R.S. § 38-12-103, Colorado landlords must:

1. Return a tenant's security deposit within one month after lease termination (or up to 60 days if the lease specifies).
2. Provide a written statement of deductions for any amounts withheld.
3. Not withhold more than what is necessary for unpaid rent, damage beyond normal wear and tear, or contractual obligations.

Failure to comply permits recovery of the security deposit, treble damages, and attorneys' fees.

**Application to Plaintiff and Nexus to Each Defendant:**
**Violations of Statutory Duties:**
Defendants—including Abacus Capital Group, LLC, Michael Sarno, AMFP V Central Park, LLC, Sako Partners Lower Holdings, LLC, Asset Living, LLC, Michael and Ryan McGrath, and Shanna Martinez—violated Colorado security deposit law in the following ways:

1. **Failure to Return Security Deposit:**
   - Plaintiff Jason Haubenreiser provided proper notice of lease termination and fulfilled all contractual obligations, yet Defendants either threatened to withhold or failed to return his security deposit.
   - The threatened deductions exceeded legal limitations and included charges for conditions resulting from Defendants' own failure to maintain habitable premises.
2. **Failure to Provide Written Itemization:**
   - Defendants did not provide a written accounting of the deductions taken from Plaintiff's deposit as required by law.
   - When Plaintiff attempted to inquire, access to his lease portal was restricted and communications with management were obstructed.
3. **Unlawful and Excessive Withholding:**
   - Deductions were made without evidence of damage beyond normal wear and tear.
   - Defendants' conduct was part of a pattern of retaliation against Plaintiff for protected complaints regarding habitability and safety.
4. **Bad Faith and Willfulness:**
   - Defendants acted in bad faith by using the deposit to extract additional payments and retaliate against Plaintiff's legal assertions. Their failure to comply was not accidental, but part of broader misconduct.

**Nexus to Each Defendant:**

- **Abacus Capital Group, LLC** and **Michael Sarno** exercised budgetary control and oversaw financial practices, including the processing of deposits and fees, and failed to ensure legal compliance.
- **Asset Living, LLC**, **Sako Partners**, and the **McGraths** directed onsite operations and were responsible for the administration and retention of security deposits.
- **Shanna Martinez**, as the on-site property manager, specifically communicated the improper retention and failed to issue required documentation, acting on behalf of the other Defendants.

**Conclusion:**
Defendants' actions clearly violated C.R.S. § 38-12-103 by unlawfully retaining Plaintiff's security deposit without justification, failing to issue the required itemized statements, and acting in willful bad faith.

Plaintiff respectfully requests: Return of the wrongfully withheld security deposit; Treble damages as permitted under Colorado law; Attorneys' fees and costs; Any additional relief deemed just and equitable by the Court.

---

<u>CLAIM XXIII: VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) (18 U.S.C. §§ 1961–1968)</u>

**Elements:** To establish a RICO violation under 18 U.S.C. §§ 1962(c) and (d), Plaintiff must show:

1. Defendants participated in an enterprise;
2. The enterprise engaged in a pattern of racketeering activity; and
3. Plaintiff was injured by reason of the defendants' racketeering conduct.
4. 

**Application to Plaintiff and Nexus to Each Defendant:**
**Enterprise and Pattern of Racketeering Activity:**

- Defendants—including **Abacus Capital Group, LLC, Michael Sarno, AMFP V Central Park, LLC, Sako Partners Lower Holdings, LLC, Asset Living, LLC, Michael and Ryan McGrath**, and **Shanna Martinez**—operated as an interconnected enterprise responsible for the management, financial decisions, legal compliance, and tenant interactions at Avantus Apartments.
- This enterprise engaged in a pattern of racketeering activity that included:
  - Falsifying tenant ledgers and lease agreements;
  - Submitting false or misleading reports to federal housing programs (e.g., Section 8);
  - Suppressing tenant complaints and evidence of code violations;
  - Retaliating against whistleblower tenants (including Plaintiff) through fabricated lease violations, inflated charges, unlawful evictions, and digital record tampering;
  - Misrepresenting property conditions to city inspectors and federal agencies while continuing to collect taxpayer-funded subsidies.

**Specific Racketeering Acts:**

- Use of **interstate wires and mail** to transmit fraudulent lease information, billing documents, and certifications to federal agencies and third-party property partners.
- **Fraudulent billing** of housing subsidies by representing units as habitable despite ongoing city violations, CORA documentation, and extensive visual evidence provided by Plaintiff.
- **Obstruction of justice and witness retaliation**, including efforts to silence Plaintiff Jason Haubenreiser and others by losing leases, changing ledgers, manipulating management records, and installing dangerous tenants in proximity to known whistleblowers.

**Nexus to Each Defendant:**

- **Abacus Capital Group, LLC** and **Michael Sarno** oversaw the operation of the property's finances and authorized the submission of documentation to federal housing authorities. They were in receipt of tenant complaints and ignored them while certifying compliance.
- **AMFP V Central Park, LLC** was the registered owner collecting financial proceeds and benefits under fraudulent premises.
- **Sako Partners Lower Holdings, LLC** and the **McGraths** facilitated and knowingly allowed retaliatory practices, lease falsification, and the suppression of whistleblower activity.
- **Asset Living, LLC** and **Shanna Martinez**, through direct actions and operational control, carried out the racketeering activities on the ground by falsifying records, evading citations, and manipulating tenant files.

**Causation and Injury:**

- Plaintiff suffered economic losses (including unlawful rent increases and forced legal costs), emotional harm (due to threats, retaliation, and harassment), and the deprivation of federal and state protections afforded to tenants in subsidized housing.

**Conclusion:** Defendants' systemic fraud and intimidation constitute a clear pattern of racketeering activity under the RICO Act. Their coordination across corporate, managerial, and operational levels deprived Plaintiff of lawful housing rights, retaliated against his whistleblowing, and abused public funding through false certifications.

Plaintiff respectfully seeks: Treble damages as permitted under 18 U.S.C. § 1964(c); Compensatory and punitive damages for all economic and non-economic harm; Injunctive relief to dissolve or restrain the offending enterprise's continued control over the Property; and Attorneys' fees and any other relief this Court deems just and proper.

<u>CLAIM XXIV: NUISANCE (COMMON LAW AND DENVER MUNICIPAL CODE § 36-5)</u>

**Elements:** To establish nuisance under Colorado common law and the Denver Municipal Code § 36-5, Plaintiff must demonstrate:

1. Defendants created, permitted, or failed to correct a condition that substantially and unreasonably interfered with Plaintiff's use and enjoyment of their premises.
2. The interference was ongoing and materially affected Plaintiff's health, comfort, or property.

**Application to Plaintiff and Nexus to Each Defendant:**

**Persistent Nuisance Conditions:** Defendants, acting collectively and in concert, maintained persistent and hazardous nuisance conditions at the Avantus Apartments. These included:

- **Trash accumulation and improper waste disposal**: Trash was allowed to pile up in hallways and common areas to human-height levels, as shown in timestamped video evidence, creating unbearable odors and unsafe, unsanitary conditions.
- **Pest infestations**: Repeated, unchecked infestations of cockroaches, rodents, and flies caused damage to tenant property and health.
- **Rampant criminal activity**: Defendants allowed dangerous individuals to live or loiter on the property unchecked, resulting in drug sales, violent altercations, and persistent threats to tenants' safety.

**Nexus to Each Defendant:**

- **Abacus Capital Group, LLC**, **AMFP V Central Park, LLC**, and **Michael Sarno** had operational control and fiduciary responsibility for budgeting and policy oversight. Their decision to underfund maintenance, security, and sanitation contributed directly to the unsafe conditions.
- **Asset Living, LLC**, **Sako Partners Lower Holdings, LLC**, and the **McGraths** were responsible for executing day-to-day operations, supervising on-site personnel, and responding to tenant complaints, which they failed to do consistently or in good faith.
- **Shanna Martinez**, as the on-site manager, personally received multiple direct complaints and submitted misleading reports to city officials and residents while failing to correct the underlying hazardous conditions.

**Substantial and Unreasonable Interference:** These conditions substantially and unreasonably interfered with Plaintiff Jason Haubenreiser's health, safety, and use of the property. Plaintiff and other tenants were subjected to:

- Constant fear due to criminal intrusions and violent altercations.
- Ongoing illness and exacerbated medical conditions caused by mold, trash, and pests.
- Emotional distress due to deteriorating living conditions and lack of relief.

**Conclusion:** Defendants' sustained maintenance of unsafe, unsanitary, and dangerous conditions constitutes a nuisance under Colorado common law and Denver Municipal Code § 36-5. These conditions caused severe harm to Plaintiff, including emotional distress, disruption of daily life, and fear for personal safety.

Plaintiff respectfully requests that the Court award compensatory and punitive damages, injunctive relief requiring Defendants to abate the nuisance conditions, attorneys' fees, and any other relief deemed just and equitable.

CLAIM XXV: CONSTRUCTIVE EVICTION (COMMON LAW)

**Elements:** Under Colorado common law, a claim for constructive eviction requires Plaintiff to prove:

1. Defendants rendered the leased premises uninhabitable or substantially interfered with the tenant's use and enjoyment of the premises.
2. The interference was so severe that the tenant was forced to vacate or was deprived of meaningful use of the premises.

**Application to Plaintiff and Nexus to Each Defendant:**

**Constructive Eviction through Systemic Misconduct:** Plaintiff Jason Haubenreiser experienced conditions so severe and persistent that they rendered his home effectively uninhabitable. These included:

- Repeated raw sewage backups into Plaintiff's bathroom that went unaddressed for days despite over a dozen emergency maintenance calls;
- Persistent and documented criminal activity, including assaults, drug trafficking, and weapons brandishing near Plaintiff's unit, all of which were reported to Defendants;
- Broken security systems, including unlocked exterior doors, broken locks, and non-functional intercom systems;
- Disabled elevators, forcing a mobility-impaired tenant to use unsafe stairwells;
- Excessive noise, late-night harassment, and retaliatory tenant placements by management.

**Nexus to Defendants:**

- **Abacus Capital Group, LLC** and **Michael Sarno** approved budgets, denied security upgrades, and maintained decision-making authority over maintenance allocations despite full awareness of dangerous and unsanitary conditions through property reports and tenant correspondence.
- **AMFP V Central Park, LLC** held title to the property and is thus responsible under landlord-tenant law.
- **Asset Living, LLC**, **Sako Partners Lower Holdings, LLC**, and the **McGraths** coordinated property operations, hired and supervised staff, and responded (or failed to respond) to maintenance requests.
- **Shanna Martinez**, acting as the onsite manager, directly refused work orders, tampered with Plaintiff's rent ledgers, dismissed documented complaints, and retaliated against Plaintiff by threatening eviction and disabling his access to the resident portal.

**Causation:** Defendants' collective failure to respond to grave safety and habitability violations forced Plaintiff to endure daily threats to life and health, which deprived him of the meaningful use and enjoyment of the leased premises. Even though Plaintiff remained physically in the unit for some time, he lived in a constant state of fear and duress, unable to safely or peacefully reside there.

**Conclusion:** Defendants' acts and omissions amounted to constructive eviction under Colorado law. Their coordinated inaction, retaliation, and knowing perpetuation of uninhabitable conditions resulted in substantial interference with Plaintiff's tenancy.

Plaintiff respectfully seeks compensatory and punitive damages, non-economic damages for emotional distress, and any further equitable relief the Court deems appropriate to redress this constructive eviction.

## CLAIM XXVI: CIVIL CONSPIRACY (COMMON LAW)

**Elements:** Under Colorado common law, civil conspiracy requires proof that:

1. Two or more persons agreed, by words or conduct, to accomplish an unlawful goal or to accomplish a lawful goal through unlawful means.
2. One or more unlawful acts were taken in furtherance of the conspiracy.
3. Plaintiff suffered damages as a direct result of the conspiratorial conduct.

**Application to Plaintiff and Nexus to Each Defendant:**

**Agreement and Coordinated Unlawful Conduct:** Defendants—Abacus Capital Group, LLC, Michael Sarno, AMFP V Central Park, LLC, Asset Living, LLC, Sako Partners Lower Holdings, LLC, Michael and Ryan McGrath, and Shanna Martinez—knowingly and collectively conspired to harm Plaintiff Jason Haubenreiser through a consistent pattern of misconduct. This misconduct included falsification of records, suppression of tenant complaints, retaliation, and refusal to perform legal obligations regarding habitability, safety, and federal housing law.

1. **Falsification and Manipulation of Records:**
   - Defendants jointly manipulated Plaintiff's payment ledgers, "lost" or altered leases, and retroactively fabricated non-existent violations to create false grounds for eviction or increased rent.
   - These acts were not accidental or isolated; they reflect a coordinated pattern across several management periods, including during the tenures of Asset Living and Martinez.
2. **Installation of Dangerous Tenants and Suppression of Complaints:**
   - Defendants strategically installed tenants known to engage in criminal activity in units adjacent to Plaintiff despite multiple written and video-documented warnings.
   - After Plaintiff filed formal complaints and involved city authorities, Defendants failed to act, demonstrating their agreement to suppress Plaintiff's protected activity and force him to self-evict.
3. **Retaliation and Collusion:**
   - Coordinated retaliatory actions followed Plaintiff's engagement in protected conduct, including contact with law enforcement, city code enforcement, and filing this lawsuit.
   - Defendants acted in concert—evidenced through coordinated written communications, identical policy applications, and persistent refusal to address issues despite known legal requirements.

**Nexus:**

- **Abacus Capital Group, LLC** and **Michael Sarno** directed financial and strategic oversight, with full access to internal property reports.
- **Asset Living, LLC, Sako Partners**, and the **McGraths** controlled daily operations and shared internal communications regarding Plaintiff's complaints and litigation.
- **Shanna Martinez** executed and directed many of the retaliatory acts and coordinated with Asset and Sako leadership in denying repairs and obstructing tenant rights.

**Conclusion:** Defendants' coordinated conduct rises to the level of civil conspiracy under Colorado common law. Their shared objective to suppress lawful tenant complaints, alter evidence, retaliate against protected conduct, and manipulate lease data resulted in severe economic and non-economic harm to Plaintiff.

Plaintiff respectfully requests compensatory damages, punitive damages to deter similar misconduct, injunctive relief preventing further conspiratorial acts, and reasonable attorneys' fees and costs.

---

## CLAIM XXVII: UNFAIR OR DECEPTIVE PRACTICES IN REAL ESTATE TRANSACTIONS (C.R.S. § 6-1-105(1))

**Elements:** Under C.R.S. § 6-1-105(1), Plaintiff must show:

1. Defendants engaged in deceptive or unfair practices in the course of real estate transactions.
2. Plaintiff relied on these practices.
3. Plaintiff suffered damages as a result.

**Application to Plaintiff and Nexus to Each Defendant:**
**Deceptive Practices and Material Misrepresentations:**
Defendants—including Abacus Capital Group, LLC, Michael Sarno, AMFP V Central Park, LLC, Sako Partners Lower Holdings, LLC, Asset Living, LLC, Michael and Ryan McGrath, and Shanna Martinez—repeatedly engaged in unfair and deceptive acts within the meaning of C.R.S. § 6-1-105(1), particularly in their representations made to tenants during the leasing and renewal process:

1. **False Representations of Habitability and Safety:**
   - Defendants distributed and advertised leasing materials promising clean, safe, and habitable apartments with functional amenities and adequate security. In truth, the Property was plagued with sewage backups, pest infestations, non-functional elevators, inoperable fire systems, and persistent criminal activity.
   - **Shanna Martinez**, acting on behalf of **Asset Living, LLC** and under the direction of **Sako Partners** and the **McGraths**, personally represented to tenants—including Plaintiff—that issues had been resolved or did not exist, despite overwhelming evidence to the contrary.
2. **Deceptive Lease Terms and Omissions:**
   - Defendants failed to disclose known habitability and safety issues at the time of lease execution or renewal. Lease documents omitted language required under Colorado law regarding tenant rights to a habitable unit.
   - Plaintiff relied on these omissions and misrepresentations when entering into and renewing lease agreements, believing the Property would be habitable and compliant with applicable codes.
3. **Nexus:**
   - **Abacus Capital Group, LLC** and **Michael Sarno** oversaw strategic operations, approved misleading advertising language, and continued funding property management services with full knowledge of ongoing habitability complaints.
   - **AMFP V Central Park, LLC**, as the titled owner, is liable for representations made by its agents and beneficiaries, who acted in concert to mislead tenants.
   - **Asset Living, LLC** and its subsidiary staff, under **Sako Partners**, actively enforced lease terms that were based on deceptive marketing and failed to remedy known violations.
   - **Michael and Ryan McGrath** were decision-makers in daily operations and are responsible for the policies and messaging carried out by on-site management.

**Conclusion:** Defendants' conduct constitutes unfair and deceptive trade practices in violation of C.R.S. § 6-1-105(1). Their material misrepresentations and omissions directly misled Plaintiff into

entering lease agreements for uninhabitable premises. As a result, Plaintiff suffered financial harm, emotional distress, and the deprivation of statutorily protected housing rights.

Plaintiff respectfully requests statutory and compensatory damages under the Colorado Consumer Protection Act, injunctive relief prohibiting Defendants from continuing deceptive leasing practices, attorneys' fees and costs, and any additional relief deemed just and equitable by this Court.

---

## CLAIM XXVIII: VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA) (15 U.S.C. §§ 1692–1692p)

**Elements:** To prevail on a claim under the FDCPA, Plaintiff must demonstrate:

1. Defendants are "debt collectors" under the FDCPA.
2. Defendants engaged in conduct prohibited by the FDCPA.
3. Plaintiff was harmed by the Defendants' actions.

**Application to Plaintiff and Nexus to Each Defendant:**
Defendants, including Asset Living, LLC, Abacus Capital Group, LLC, AMFP V Central Park, LLC, Michael Sarno, Sako Partners Lower Holdings, LLC, Michael McGrath, Ryan McGrath, and Shanna Martinez, regularly sought payment of residential debts from Plaintiff in a manner that violated multiple provisions of the FDCPA.

1. **Debt Collection Misconduct:**
   - Defendants knowingly and illegally altered Plaintiff Jason Haubenreiser's rent ledger to create a false appearance of delinquency.
   - These fabricated balances were used to justify threats of eviction and the imposition of improper fees.
   - Defendants failed to provide proper notice of debt as required under 15 U.S.C. § 1692g and communicated misleading representations regarding the status and amount of debt in violation of § 1692e.
2. **Retaliatory Collection Practices:**
   - Plaintiff's ledger was tampered with following complaints about habitability and discrimination, constituting retaliatory debt collection conduct.
   - These actions were performed at the direction of **Shanna Martinez**, and with the approval of **Asset Living, LLC** and the **McGrath** brothers.
   - **Abacus Capital Group** and **Michael Sarno**, as upper-level decision-makers, received internal reports detailing these tactics and allowed them to continue in violation of federal law.
3. **Harm to Plaintiff:**
   - Plaintiff suffered emotional distress, loss of housing stability, increased financial burden, and substantial legal costs due to these unlawful debt collection activities.

**Conclusion:** Defendants, acting individually and through coordinated enterprise, violated the Fair Debt Collection Practices Act by manipulating rent ledgers, imposing unlawful charges, and engaging in misleading and retaliatory practices. These acts were not only prohibited by the FDCPA, but also inflicted real and substantial harm on Plaintiff.

Plaintiff respectfully requests statutory damages, actual and compensatory damages, punitive damages, attorney's fees, and injunctive relief to prevent future violations. All relief sought is within the jurisdiction of this Court and is necessary to ensure full accountability under 15 U.S.C. §§ 1692–1692p.

---

CLAIM XXIX: PROMISSORY ESTOPPEL (COMMON LAW)

**Elements:** Under Colorado common law, a claim for promissory estoppel requires that:

1. Defendants made a clear and unambiguous promise.
2. Plaintiff reasonably and foreseeably relied on that promise.
3. Plaintiff suffered detriment as a result of that reliance.

**Application to Plaintiff and Nexus to Each Defendant:**

**Promises Made and Reliance by Plaintiff:** Defendants—including Abacus Capital Group, LLC, Michael Sarno, AMFP V Central Park, LLC, Sako Partners Lower Holdings, LLC, Asset Living, LLC, Michael and Ryan McGrath, and Shanna Martinez—collectively and individually made explicit and implied promises to Plaintiff Jason Haubenreiser and other tenants that the leased residential units would be safe, habitable, and in compliance with all applicable laws.

These promises included:

- Publicly advertised representations of safe and well-maintained housing conditions;
- Lease agreements stating that the premises would be kept in habitable condition and repairs would be performed in a timely manner;
- Verbal and written assurances that specific tenant complaints (e.g., sewage backups, violent tenants, broken elevators) would be addressed.

Plaintiff justifiably relied on these promises by:

- Entering into and renewing lease agreements with Defendants;
- Continuing to pay full rent and remaining on the premises despite dangerous conditions;
- Forgoing earlier relocation opportunities and enduring personal risk while expecting corrective actions that never occurred.

**Resulting Harm:**

- Plaintiff experienced severe physical, emotional, and financial harm as a direct result of Defendants' failure to fulfill their promises.
- This includes but is not limited to medical costs, PTSD aggravation, and personal injury due to unsafe conditions, all of which were exacerbated by Plaintiff's reasonable reliance on the promises made.

**Nexus to Each Defendant:**

- **Abacus Capital Group, LLC** and **Michael Sarno**, as property owners and decision-makers, controlled budgets and had ultimate authority to approve repairs and resident accommodations.
- **AMFP V Central Park, LLC** held ownership and financial interest in the property, benefiting from tenant reliance on its contractual representations.
- **Asset Living, LLC** and **Sako Partners** operated the day-to-day management and were responsible for enforcing lease terms and communicating with tenants about maintenance and safety.
- **Michael and Ryan McGrath** had supervisory authority and direct involvement in property oversight and approval of actions that contradicted the representations made.

- **Shanna Martinez**, as onsite property manager, made specific promises directly to Plaintiff regarding repairs and resident safety, while simultaneously overseeing and allowing the retaliation and neglect.

**Conclusion:** Defendants induced Plaintiff to rely on representations of safety and habitability, then failed to deliver while continuing to benefit financially. Their actions constitute promissory estoppel under Colorado law.

Plaintiff respectfully requests: Reliance damages for economic and non-economic losses sustained; Injunctive relief requiring Defendants to comply with legal and equitable standards; Attorneys' fees, and any other relief deemed just and proper by this Court.

---

CLAIM XXX: INTENTIONAL MISREPRESENTATION OR FRAUD (COMMON LAW)

**Elements:** Under Colorado common law, a claim for intentional misrepresentation or fraud requires Plaintiff to prove:

1. Defendants made a false representation of a material fact.
2. Defendants knew the representation was false or made it recklessly, without regard for its truth.
3. Defendants intended that Plaintiff rely on the misrepresentation.
4. Plaintiff reasonably relied on the false representation.
5. Plaintiff suffered damages as a result.

**Application to Plaintiff and Nexus to Each Defendant:**
**False Representations and Inducement:**
Defendants—including Abacus Capital Group, LLC, Michael Sarno, AMFP V Central Park, LLC, Sako Partners Lower Holdings, LLC, Asset Living, LLC, Michael and Ryan McGrath, and Shanna Martinez—knowingly and repeatedly made false representations to Plaintiff and other tenants concerning the safety, habitability, and legal compliance of the property:

1. **Misstatements in Leasing Documents and Promotional Materials:**
   - Defendants falsely represented that the premises were safe, secure, and compliant with habitability requirements. These representations included assurances about working elevators, fire safety systems, pest control, heating and plumbing, security doors, and ADA-compliant features—all of which were later shown to be nonfunctional or absent.
2. **Concealment of Known Defects and Violations:**
   - Defendants were aware of numerous unremediated violations—including city citations for fire hazards, rodent infestations, and sewage backups—but failed to disclose these to Plaintiff prior to lease signing or renewal.
   - Defendants knowingly suppressed the fact that they were under multiple investigations for habitability violations.
3. **Intent to Induce Reliance:**
   - Defendants made these misrepresentations and omissions to induce Plaintiff to sign or renew their lease and continue paying full market rent despite objectively dangerous and degrading living conditions.
4. **Resulting Reliance and Harm:**
   - Plaintiff Jason Haubenreiser reasonably relied on Defendants' false representations when entering into and maintaining his lease. As a result, Plaintiff suffered economic damages

in the form of rent payments for uninhabitable housing, medical expenses due to worsened health conditions, and legal costs.

**Nexus:**

- **Abacus Capital Group, LLC** and **Michael Sarno** orchestrated the financing, oversight, and approval of all leasing and promotional practices and had full knowledge of the misrepresented conditions from internal reports and tenant complaints.
- **Asset Living, LLC, Sako Partners**, and the **McGraths** oversaw daily operations and actively directed staff to make fraudulent representations while instructing them not to disclose ongoing hazards to tenants.
- **Shanna Martinez**, as the on-site manager, made many of the misrepresentations directly to Plaintiff, including repeated claims that issues were resolved when they were not and misstatements about the cause of recurring problems like broken locks and failing elevators.

**Conclusion:** Defendants' conduct constitutes intentional misrepresentation and fraud under Colorado law. They knowingly misled Plaintiff about material facts regarding the safety, habitability, and legality of the property with the intent to induce reliance. Plaintiff suffered both economic and non-economic damages, including financial losses, health deterioration, and severe emotional distress.

Plaintiff respectfully requests compensatory damages, punitive damages to deter similar misconduct, attorneys' fees, and all other relief deemed just and proper by the Court.

---

## CLAIM XXXI: BREACH OF FIDUCIARY DUTY (COMMON LAW)

**Elements:** Under Colorado law, a claim for breach of fiduciary duty requires:

1. A fiduciary duty existed between Plaintiff and Defendants;
2. Defendants breached that duty; and
3. The breach caused harm to the Plaintiff.

**Application to Plaintiff and Nexus to Each Defendant:**
Defendants, as property managers, owners, and agents of the residential premises where Plaintiff resided, assumed fiduciary duties to act in good faith, disclose material information, and prioritize tenant welfare under both statutory and common law standards.

**Breach of Fiduciary Duty:**

1. **Failure to Act in Plaintiff's Best Interests:**
   - Rather than ensuring habitable conditions, Defendants prioritized cost-cutting and profit-maximization. This included neglecting critical repairs, ignoring tenant complaints, and suppressing unfavorable reports to maintain appearances for investors and regulatory bodies.
2. **Systemic Concealment and Misrepresentation:**
   - Defendants collectively concealed or misrepresented the condition of the property to both tenants and federal/state housing authorities, violating duties of loyalty, candor, and care.
3. **Retaliation and Obstruction:**
   - Defendants, particularly **Shanna Martinez, Asset Living, LLC**, and the **McGraths,** engaged in targeted retaliation against Plaintiff Jason Haubenreiser after he raised safety

and habitability concerns. Actions included disabling his resident portal, denying access to staff, falsifying payment records, and assigning criminal tenants to adjacent units.

4. **Non-Disclosure of Material Risks:**
   - Defendants withheld critical information regarding persistent sewage backups, fire code violations, mold infestations, and active criminal threats—placing Plaintiff at physical and emotional risk without providing informed options.
5. **Lack of Oversight and Enabling Misconduct:**
   - **Abacus Capital Group, LLC**, **Michael Sarno**, and **AMFP V Central Park, LLC**, in their roles as owners and fiduciaries managing financial and operational oversight, had access to inspection reports, resident complaints, and expense logs that demonstrated knowledge of these hazardous conditions. Their failure to act upon this information constitutes willful indifference and breach of fiduciary obligations.

**Conclusion:** Defendants' actions—individually and collectively—amount to a profound breach of fiduciary duty. They violated their duty to act in the best interest of Plaintiff by intentionally placing profits, regulatory evasion, and personal interest above the health, safety, and welfare of a vulnerable tenant with documented disabilities and legal protections. As a direct result, Plaintiff suffered physical harm, emotional trauma, economic loss, and loss of legal rights.

Plaintiff respectfully requests that the Court award compensatory damages, punitive damages to deter similar future misconduct, attorneys' fees and costs, and such other relief as the Court deems just and proper.

---

SPECIFIC VIDEOS DEMONSTRATING CLEAR BREACH OF DUTIES

**Dropbox and YouTube Channel as Evidence Repository:**

- Mr. Haubenreiser has created and maintained a Dropbox and YouTube channel that serves as a repository of all evidence supporting Plaintiff claims. This evidentiary depository contains videos documenting the unsafe and uninhabitable conditions at Avantus Apartments, the failure of Abacus, Michael Sarno, Sako, Asset Living, LLC, the Mcgraths, and their managers, to address these conditions, and the retaliatory actions taken against residents.

The Court is encouraged to review these videos as they provide clear, visual evidence of the defendants' violations. There is also a public dropbox available at https://www.dropbox.com/scl/fo/sui3blf5ynk39s4i8wusi/h?rlkey=9wgiklrim0luzbotem9zm9kwc&st=91zfrad3&dl=0

VII. DAMAGES AND PRAYER FOR RELIEF

Given the severity and ongoing nature of the damages caused by the defendants' actions, the plaintiff seeks the following relief:

**Compensatory Damages:**

- Physical, Emotional, and Mental Distress: Compensation for the severe physical, emotional, and mental distress caused by the defendants' negligence, for over two years, including the exacerbation of Mr. Haubenreiser's existing disabilities due to lack of elevator access and exposure to unsafe conditions such as sewage backups, pest infestations, and criminal assaults. The distress suffered by the Mr. Haubenreiser and other potential Plaintiffs includes but is not limited to

sleepless nights, anxiety, worsening of PTSD symptoms, fear for life and safety, inability to feel safe in one's own dwelling, and physical injuries aggravated by the defendants' willing or grossly negligent failure to maintain the elevators or premises in habitable, safe condition or to abate known, credible, specific, and imminent dangers to the Plaintiff's life and safety. Plaintiff also suffered severe physical assaults break-ins and other extreme criminal activity.

- Loss of Property Enjoyment: Compensation for the significant loss of enjoyment of the property, including the inability to use the apartment in a safe and comfortable manner. The plaintiff was deprived of basic living conditions that should be guaranteed under Colorado's Warranty of Habitability, forcing them to endure conditions that were dangerous and unsanitary.
- Medical Expenses: Reimbursement for any medical expenses incurred as a direct result of the defendants' negligence, including treatments for health conditions aggravated or caused by the unsafe living conditions, such as respiratory issues due to mold exposure, injuries related to the lack of functional elevators, and medical treatment required after the assault on Mr. Haubenreiser and his severe head injury.
- Relocation Costs: Compensation for any costs associated with relocating to a safer environment, should the Plaintiff be forced to move due to the uninhabitable conditions created and maintained by the defendants. This includes moving expenses, lease termination fees, and any increased rent at a new location should the premises be closed by city officials.
- Property Damage: Reimbursement for any personal property damaged or destroyed as a result of the defendants' negligence, such as furniture, clothing, or appliances or other property ruined by sewage backups, leaks, break-ins, or infestations.

**Punitive Damages:**

- Punitive damages to penalize the defendants for their willful and malicious conduct. The defendants' actions in ignoring repeated complaints, failing to provide basic living conditions, and retaliating against tenants demonstrate a blatant disregard for the law and the well-being of the plaintiff. Punitive damages are necessary to deter such conduct in the future and to hold the defendants accountable for their actions. Money is the only thing that matters to national conglomerates mismanaging properties across the state and nation. Damages are the only thing they will pay attention to.

**Statutory and Treble Damages:**

- Pursuant to Colorado and Federal law, the Plaintiff seek treble damages as allowed under C.R.S. §§ 38-12-509 et seq.; C.R.S. § 38-12-103 et seq.; and (RICO) (18 U.S.C. §§ 1961-1968) due to the defendants' retaliatory and illegal actions. These damages are intended to multiply the Plaintiff' actual damages by three times to reflect the severity of the defendants' unlawful conduct.

**Attorney Fees and Costs:**

- An award for attorney fees (or time spent) and court costs incurred by the plaintiff in pursuing this action. The plaintiff has been forced to engage in legal maneuvers and incur costs due to the defendants' failure to address their lawful complaints and the retaliatory actions taken against them.

**Declaratory and Injunctive Relief:**

- A declaratory judgment affirming that the defendants violated Colorado's Warranty of Habitability, the ADA, FHAA, CADA, and the Colorado CARES Act, Et Al. Additionally, injunctive relief requiring the defendants to cease any further retaliatory actions and to take all

necessary steps to remedy the damages caused by their past actions, including but not limited to providing financial compensation to the plaintiff.

**Prohibition Against Mismanaging Properties and Control of Property Given to Trustee:**
- An order permanently prohibiting Asset Living, LLC, AMFP V Central Park, and Abacus Capital from mismanaging any more residential properties within the State of Colorado. This measure is necessary to protect other tenants from the egregious conduct exhibited by the defendants in this case and to prevent further harm to vulnerable communities.

This would be the most important and meaningful step the court can take to stop the Defendant's malicious conduct.

**Any Other Remedies Available Which the Plaintiff Have Not Named, or Any Relief Deemed Appropriate by The Honorable Court:**
- The plaintiff requests any other relief which the Plaintiff may not have named or are unaware of, such as criminal sanctions, that the court deems just and equitable in light of the defendants' conduct and the severe harm suffered by the plaintiff and to communities across the nation.

## VIII. VERIFICATION

The Plaintiff, Jason Haubenreiser, and other potential Plaintiffs hereby state and allege that the foregoing statements are true and correct to the best of our individual's knowledge and belief.

Dated: 4/22/2025

Signed:
Jason Haubenreiser
---

## IX. CERTIFICATE OF SERVICE

I hereby certify that on April 22nd, 2025, a true and correct copy of the foregoing AMENDED COMPLAINT was filed with the Court and served via Colorado Courts E-Filing and that a courtesy copy was emailed to Defendant's counsel, registered agent, or by proper, lawful individual or substitute service at the following:

Issued by:
Jason. Haubenreiser, *Pro Se*
1955 Ulster St. #452
Denver, Colorado 80220
720-272-8457
Dated: 4/22/2025
Signed: *Jason Haubenreiser*

Issued to:
Matthew J. Weeber, Esq.
BAYER & CAREY, PC
1660 Downing Street
Denver, CO 80218

E-mail: mweeber@bayerlaw.com
Phone: 303-830-8911
www.bayerlaw.com

AMFP V Central Park, Abacus Capital,
and Michael G. Sarno
999 18th St., Suite 925N
Denver, CO, 80202
Phone: 720-379-1800
Email: Midwestacq@abacuscapitalgroup.com

Michael G. Sarno
1650 Monaco, Denver CO, 80220

Sako Pertners Lower Holdings, LLC; Asset Living, LLC;
M. Ryan Mcgrath; and Michael S. Mcgrath
945 Bunker Hill Rd.,
FL 14.
Houston, TX 77024

M. Ryan Mcgrath
281 Bryn Mawr Cir. Houston, TX 77024

Michael S. Mcgrath
514 Lindenwood Dr. Houston, TX 77024

Robert R. Marsh
1999 Broadway, Suite 3225
Denver, CO 80202
(303) 377-7888
Email: rmarsh@jgllp.com

Shanna Martinez
56303 E. 24th Pl.,
Strasburg, CO 80136
Phone: 303-802-0247